GEORGE RIGLEY v. EDWARD B. PRYOR et al., Receivers of WABASH RAILROAD COMPANY, Appellants.

Division Two, October 6, 1921.

1. **NEGLIGENCE: Change of Testimony on Second Trial.** A plaintiff who on a former trial was induced by the skillful cross-examination of defendant's attorney to make statements contrary to the facts should not be nonsuited for telling the truth about the matter at the second trial. Where the usual duties of plaintiff were to walk the track, but when not so engaged he assisted the section men in repairing the track, and he was injured while on a hand-car, going with a section crew to work upon the track, he ought not to be nonsuited because on the former trial he testified in answer to leading questions by defendant's counsel that he was a track-walker, especially where he also testified on direct examination that it was a part of his duty to be on the hand-car at the time he was injured, although the Court of Appeals, on appeal, held that the evidence showed he was a track-walker, and being such he could not recover because it was his duty to look out for the train which struck the hand-car.

2. ———: **Collision With Hand-car: Fog: Sufficient Evidence.** The morning was very foggy, and the six section men on the hand-car could see only twenty or thirty feet ahead; they had proceeded a mile or so when a train, coming from the opposite direction, ran upon the hand-car, knocked it off the track, killed five of the men and injured plaintiff; it was necessary for section men to pass along the track in foggy weather on a hand-car, and such cars were to be expected by the trainmen; it was the usual practice for trains passing through such fogs to sound the bell continuously, blow the whistle frequently and run ten or twelve miles an hour; the train was run at a speed of twenty-five miles; plaintiff testified that he and the crew were listening and looking for trains, and that he could hear the whistle a half mile when it was sounded and had heard it that distance; that he did not hear either the whistle or the bell; the engineer, fireman, conductor and brakemen testified that the bell was rung continuously and the whistle sounded at intervals, but none of them was definite as to just when or how often the whistle was sounded, and the engineer testified that as near as he could recall he sounded the whistle twice in

Rigley v. Pryor.

running a mile and a quarter, but there was no positive evidence that it was sounded within a half mile of the collision, and plaintiff's testimony was positive that it was not sounded within that distance. *Held*, that a demurrer to the evidence could not properly have been sustained, and the question of defendant's negligence was one for the jury to decide.

3. ———: ———: ———: **Not Hearing Whistle or Bell: Negative Testimony.** Where the morning was foggy, hand-cars on the track were to be expected, it was the usual practice of trainmen at such times to run the train slowly and continuously ring the bell and sound the whistle at frequent intervals, and six men on the hand-car were directly and intensely interested in hearing the whistle and bell, their lives depending on their hearing, the testimony of one of them that he could have heard the whistle a half mile and that he listened and did not hear either the bell or whistle is not ordinary negative evidence, like that of an inattentive witness who is not interested in noticing whether a certain signal is given, but is positive evidence that the bell was not rung or the whistle sounded, and its truth is for the jury to decide.

4. ———: ———: ———: **Excessive Speed: Proximate Cause.** Where the morning was very foggy, hand-cars on the track were to be expected men on the hand-car could see only twenty or thirty feet ahead, it was the usual practice of trainmen at such times to run the train ten or twelve miles an hour and to continuously ring the bell and sound the whistle at frequent intervals and there is positive testimony that neither was done, the train was being run at a speed of twenty-five miles an hour, and it is inferable from the facts that if the train had been run at the customary speed the hand-car would have reached its destination and been off the track before the train arrived, the inference that the excessive speed was the proximate cause of the collision is justified by the facts; and it is pure assumption that a train running at half the speed would have caused the same injury, for if the train had been running at half the speed the men on the hand-car would have had double time to jump for their lives, and the force of the collision would necessarily have been less.

5. ———: **Frequent Bell and Whistle: Instruction.** An instruction telling the jury that it was defendant's duty "frequently and at short intervals to sound the bell and whistle," and which also told them that the whistle should have been sounded "as a warning of the approach of said train to those on said hand-car," was not erroneous for failure to define the word "frequently."

6. ———: **Damages: Contributory Negligence: Assumption of Fact. An** instruction on the measure of damages which does not authorize a

verdict on any finding whatever, but simply calls the attention of the jury to the defense of contributory negligence and tells them what is necessary to prove in order to defeat a recovery on that ground, cannot be twisted into an assumption that defendant was negligent or into an elimination of the idea that plaintiff's negligence could have been the sole cause of his injury.

7. **EVIDENCE: Opinion on Former Appeal.** The opinion of the Court of Appeals on the former appeal, reversing the judgment and remanding the case for a new trial, is pure hearsay, and not competent evidence on any theory.-

8. **INSTRUCTION: Measure of Damages: Loss of Earning Power: Present Cash Value.** A loss of earnings is a totally different thing from loss of earning power; and an instruction which tells the jury that they may award as damages "the present cash value of such sum" as they shall find and believe from the evidence will fairly and reasonably compensate plaintiff for his past and future physical and mental pain, his medical expense, and "his pecuniary loss resulting directly from any impairment of his earning power," does not authorize them to estimate his loss of earnings at the time of the accident by the present standard of earnings when wages are much higher, but directs them to base their estimate upon his present disability, whether permanent or curable; and if the instruction is somewhat vague in directing the jury how to make the estimate for present and future suffering, defendant cannot complain unless it offers an instruction on the subject.

9. **EXCESSIVE VERDICT: $12,500: Compelled Remittitur.** The plaintiff, fifty-three years of age, traveling with a section crew on a hand-car, when it was struck by defendant's train was thrown down an embankment and lodged against a tree; the physician who examined him found a hernia in the region of the stomach and also an inguinal hernia and a lump on the right side of the spine near the kidney; there was blood in his urine, and he was treated for several months; at the time of the trial, five years later, he was nearly cured, and no visible evidence of the inguinal hernia, but some difference of "impulse" was observed on the right side; owing to disuse of the muscles on the left side they had become somewhat atrophied and weak, and there was a nervous condition, made manifest by a profuse unnatural perspiration; it is difficult to believe the injuries are permanent, although painful; he was not allowed to recover anything for loss of earnings, and the pain and suffering he endured and will endure and the impairment of his earning power were all that the jury considered, except his medical expense of $200, *Held*, that a verdict for $12,500 was excessive, and a *remittitur* of five thousand is required as a condition of affirmance.

*Held*, by WALKER, J., dissenting, that the custom arbitrarily exer-
cis.d by appellate courts in reducing the amount of verdicts is
to be deprecated, and if a verdict is out of all proportion as
a compensation for the injury inflicted, ample opportunity is
afforded for an intelligent reduction in the, trial court, and
if this is not done the appellate court should hesitate to in-
terfere, unless the amount of the verdict is glaringly excessive,
in which event the judgment should be reversed and the cause
remanded for a new trial.

Appeal from Jackson Circuit Court.—*Hon. Harris Rob-
inson*, Judge.

AFFIRMED (*on condition*).

*N. S. Brown, Homer Hall* and *Sebree & Sebree* for
appellants.

(1)  The court committed error in refusing to give
the instruction in the nature of a demurrer, asked by
defendants, at the close of the evidence.  (a)  Plaintiff,
without reasonable explanation or excuse, changed the
testimony which he gave at a former trial, which testi-
mony did not make a case.  Rigley v. Pryor, 204 S. W.
737; Faith v. Home Ins. Co., 208 S. W. 124; Steel v.
Kansas City Southern, 265 Mo. 97; Smith v. Boston Ele-
vated Ry., 184 Fed. 387; Moses v. Klusmeyer, 194 Mo.
App. 634-640; Adams v. New York City Ry. Co., 109 N.
Y. S. 1019-1022.  (b)  No negligence was proved against
defendants.  First, on the failure to ring the bell and
blow the whistle.  Rigley v. Pryor, 204 S. W. 737; Woods
v. Railway, 187 S. W. 11; Armstrong v. D. & R. G. Rail-
way, 190 S. W. 944; McNeil v. Railway, 182 S. W. 481,
489; Sanders v. Ry. Co., 147 Mo. 424.  Second, on the
speed of the train.  Third, on the action of Anderson.
Woods v. Railway, 187 S. W. 111.  (c)  Plaintiff assumed
the risk.  Pryor v. Williams, 41 U. S. C. Rep. 36.  (2)
The action of the court in giving plaintiff's instructions
was erroneous.  (a)  Instruction A.  (b)  Instruction
B.  Smith v. K. C. S. Ry. Co., 279 Mo. 191; Burns v. Penn.
Railroad, 239 Pa. 207; Chesapeake & Ohio Railroad v.

Kelly, 241 U. S. 485; Goodhart v. Railroad, 177 Pa. 1; Reitler v. Penn. Railroad, 238 Pa. 1. (d) Instruction D. Hamheide v. Transit Co., 104 Mo. App. 323, 333. (3) The court erred in excluding from the evidence the opinion of the Kansas City Court of Appeals in the former trial of this case. (4) The verdict is excessive. Drycz v. Hammond Packing Co., 194 S. W. 761; U. P. Railroad v. Sheeley, 221 Fed. 910; Laughlin v. Railroad, 205 S. W. 3.

*Atwood, Wickersham, Hill & Popham* for respondent.

(1) By the overwhelming weight of the evidence it is shown that Rigley was on duty in the line of his employment at the time of receiving his injury; that defendants habitually ran their trains and hand-cars in the same or opposite directions during foggy weather; that the only means in use by defendants for the protection of section men operating hand-cars moving through the fog and on curves where the section men's view was obstructed was for the trainmen using the track to blow the whistle and sound the bell at such frequent intervals as would warn employees on hand-cars of the approach of a train in time to enable them to remove themselves and their hand-car from the track to a place of safety. The failure of defendants' trainmen to so sound the whistle and ring the bell was a direct and proximate cause of the collision and death of Anderson, and such facts being shown, plaintiff was entitled to recover. Honea v. Railroad 245 Mo. 621, 637; Boyd v. Railroad, 249 Mo. 110, 128; Schroeder v. C. & A. R. Co., 108 Mo. 322; Boyd v. Railroad, 236 Mo. 54, 80; Smith v. Railroad, 1913A, A. & E. Anno. Cases, p. 434; Hardwick v. Railroad, 181 Mo. App. 156; Greenwell v. Railroad, 224 S. W. 404, l. c. 407; Lancaster v. A., T. & S. F., 143 Mo. App. 163; Nelson v. Railroad, 148 Pac. 388, 50 Mont. 516; M. O. & G. Railroad v. Dersberry, 167 S. W. 881; Saunders v. Railroad, 83 S. E. 573; Ry. Co. v. McGraw, 207 S. W. 559; Williams v. Railroad, 204 S.

W. 292, 181 Ky. 313; L. & N. Railroad v. Mullins, 203 S.
W. 1058, 181 Ky. 148; Bennett v. A. T. & S. Fe Rail-
road, 174 N. W. 798; O'Brien v. Erie Ry. Co., 123 N.
Y. Supp. 1040; Gulf v. Brooks, 132 S. W. 95; Hofford
v. Railroad, 110 N. W. 446, 16 L. R. A. (N. S.) 797;
L. & N. Ry. Co. v. Smith, 205 Fed. 360; Norfolk & W.
Railroad v. Earnest, 229 U. S. 114, 57 L. Ed. 1097;
Grow v. Railroad, 47 Utah, 26, 150 Pac. 970; see also
Erie Railroad v. Punecker, 244 U. S. 320-322, 61 L. Ed.
1166-1167. (2) Appellants' point No. 1, that there was
no evidence of failure to ring the bell or blow the whistle,
is without merit, because by the positive testimony of
George Rigley, the only surviving member of the section
crew, he and the rest of the section crew, including An-
derson, the foreman, were listening for the warning sig-
nals, and heard none. The car was being run slowly,
six or eight miles per hour, a little bit faster than a man
walks. At other times when similarly situated, and about
the identical place of the collision in question, Rigley
and other section men testified they had heard warn-
ing signals given in the customary way, and had removed
themselves and car from the track to a place of safety.
The jury found that defendants did fail to give the warn-
ing signals and that the collision was caused by such
failure, and this justified a finding for plaintiff. Kirk-
land v. Bixby, 222 S. W. 462; Hardwick v. Wab. Rail-
road, 181 Mo. App. 156. (b) The testimony of the fail-
ure of the engine men to run slow and to frequently
sound the warning signals, was not merely negative, but
was positive, and clearly made a jury issue. Jones
Commentaries on Evidence, sec. 898, p. 399; Stotler v.
Railroad, 200 Mo. 107, 137; Miller v. Harvey, 204 S. W.
926. (3) Plaintiff's instructions were correct. (a) Nor-
folk & W. Railroad v. Earnest, 229 U. S. 114, 57 L.
Ed. 1097; Greenwell v. C. M. & St. P., 224 S. W. 409;
Vicksburg Ry. Co. v. Putnam, 118 U. S. 545, 30 L. Ed.
257; L. R. A. 1917F, p. 373. (b) Washington & Rail-
road Co. v. La Four, 48 App. D. C. 364. Defendants
asked no instruction on measure of damages, and hence

are in no position to complain of plaintiff's instruction on this issue. Powell v. Railroad, 255 Mo. 420, 456; Waddell v. Met. St. Ry., 213 Mo. 8. (4) Plaintiff had the right to rely upon the assurances of safety of Foreman Anderson. What information about the trains Anderson received in the station was wholly unknown to Rigley, and it was not his duty to inquire or find out what information had been given. Under such circumstances, plaintiff had the right to rely upon the assurances of safety from his superior. Hayes v. Ice Co., 221 S. W. 705; Boten v. Sheffield Ice Co., 180 Mo. App. 96, 101; Burkhead v. Rope Co., 217 Mo. 466, 471; Sullivan v. Railroad, 107 Mo. 67, 78; Swearingen v. Mining Co., 212 Mo. 524; Hall v. Coal Co., 260 Mo. 351, 367. (5) The verdict of the jury was not excessive. Hurst v. Railroad, 219 S. W. 567; Greenwell v. Railroad, 224 S. W. 405; Hulse v. Railroad, 214 S. W. 156; Dunton v. Hines, 267 Fed. 452.

WHITE, C.—An action for personal injuries. The plaintiff recovered judgment in the Circuit Court of Jackson County, November 21, 1919, for the sum of $12,500. The plaintiff was in the employ of the defendant, and lived north of the Missouri River about seven miles east of Kansas City, at or near Randolph, in Clay County. About seven-thirty in the morning, January 19, 1914, he boarded a hand-car with a crew at Randolph and started westward to repair some track between that point and Kansas City. The crew consisted of a Mr. Anderson, who was foreman, the plaintiff, and four other men. The plaintiff assisted in propelling the hand-car. The morning was very foggy; the men could see a distance of only about twenty or thirty feet ahead. They had proceeded a mile or more westward from Randolph and had crossed what are termed the twin bridges when a Wabash train, coming from the west in the fog, ran upon the hand-car and knocked it off, killing all the other men, and inflicting injuries upon the plaintiff, for which he brings this suit.

The plaintiff introduced evidence to show that it was usual for heavy fogs to hang over the track along the river at that point at that time of the year; and that it was the custom for trains passing through the fog at such times to sound the bell continuously, blow the whistle at frequent intervals and run slowly. Running slowly meant ten or twelve miles an hour. Across the river from Kansas City, and about five miles west of Randolph, is what is termed Block 223, whence signals were sent to Randolph indicating trains in the block. While the crew was waiting at Randolph a train was in the block, and they waited until it passed eastward before starting. There were two paralled tracks used by the Burlington, the Rock Island, and the Wabash Railroad companies. The trains on those tracks used the north track going west, and the south track going east; the hand-car was on the south track when met by the train going east. Shortly before the collision a train on the north track going west passed the hand-car.

The plaintiff testified that as they proceeded he and the crew were listening for trains, and heard no bell and no whistle from the train which ran them down. He testified that he could have heard the whistle half a mile and had heard it that distance; that he was listening and was in a position to hear the bell and the whistle. Other evidence was offered by the plaintiff to show that crews on hand-cars going through the fog always listened and watched for trains that might cause them trouble.

The train was running at the rate of about twenty-five miles an hour. The defendant introduced evidence to show that the whistle was blown at intervals of about two or three minutes, and once or twice after the train had passed the Milwaukee bridge, which was about a mile and a quarter west of the place of collision, and that the bell was rung continuously.

On that evidence the jury returned a verdict, judgment was rendered as stated, and the defendant appealed. On a former trial a verdict was returned for $4500, and

290 Mo.—2

on appeal to the Kansas City Court of Appeals the judgment was reversed and the cause remanded.

I.   The appellant asserts that the judgment should be reversed because the plaintiff changed his testimony from what it was at the first trial. On appeal from the first trial (Rigley v. Wabash Ry. Co., 204 S. W. 737), the Kansas City Court of Appeals held that the plaintiff could not recover on two grounds: First, because there was nothing to show that the plaintiff belonged to the crew of that car or why he was on it; he appeared merely to have been there with no suggestion that he was ordered there; his duties as an employee of the railroad company were those of track-walker, and therefore he was not in the line of his duty at the time of his injury. Second, he could not recover because being a track-walker it was his duty to look out for trains.

*Changing Testimony.*

In his testimony at the last trial the plaintiff said he had been at work for the company for twelve or fourteen years; on the morning of the injury he was engaged at *track work*—was working on that section *repairing* the track; that his business consisted of walking the track, but on the morning of the injury he was working as track repairer—a section man; that a track-walker walks the tracks, and he never walks the track on a hand car; he had worked on that particular section for six or seven years, and besides being track-walker he did section work; section work consisted in going out on the track with a gang, laying rails, or doing anything to keep the track up.  He further testified that on the morning of the injury he with the crew was going to repair the track near the Milwaukee bridge, and he knew beforehand what was to be done there.  The evidence showed that before starting from Randolph the foreman went into the station and talked to the station agent, and that it was customary for the foreman in such case to ascertain about the trains. The plaintiff himself was not permitted to testify as to any orders given him by the foreman, because the fore-

Rigley v. Pryor.

man was dead at the time of the trial. It was shown by the two sons of the plaintiff who testified, and who were not present at the former trial because they were with the A. E. F. in France, that plaintiff's work consisted of going over the track and working on the track and going out on a hand-car for that purpose, and that he put in a part of his time as a section man. One witness for the plaintiff said he was present in Randolph in the morning and saw the hand-car when it started; he knew Mr. Anderson, the foreman; he saw the crew put the car on the track and get on the car, and heard Mr. Anderson instruct Rigley to get on. He saw them putting the tools on the car, he heard Anderson say, "Come on boys, let's go, everything is clear, everything will be safe," and they all got on the car, including Rigley, and moved off. This evidence, and it is uncontradicted, sufficiently shows that the plaintiff was in the line of his duty that morning and that he was not working as a track-walker.

The point made by appellant is that the plaintiff changed his testimony from the first trial where he testified that he was a track-walker. On cross-examination at the first trial Rigley, in answer to leading questions of defendant's counsel, testified that his business was to walk along the track and see that the track was in good condition, and that was all he did; that he walked up and down the track and looked at the rails and bolts and everything, to see that it was in repair and if it was not in repair he reported it to someone else, it was not his duty to repair it.

In re-direct examination the plaintiff showed he had also testified on the former trial that it was a part of his duty to go down on that hand-car that morning and that he was on duty at that time.

It is claimed that his present testimony so changes what he swore then that he ought not to recover.

This court has held that if a plaintiff on a second trial, without a reasonable explanation, changes his testimony from that given at the first trial as to facts ma-

terial to his right of action, he ought not to be credited with telling the truth, and ordinarily should suffer non-suit. [Steele v. Railroad, 265 Mo. 1. c. 110-111.] In this case the statement of the plaintiff, where he said he was a track-walker and that was all he did, and that he reported repair work to someone else, were all in answer to leading questions asked by defendant's counsel. He answered simply, "Yes, sir" and, "No, sir" to the questions asked. He said at the same time that it was his duty to go out on a hand-car that morning.

The evidence at the present trial sufficiently shows that while he was a track-walker he had the additional duty to assist in repairing the track; that he did section work also as a part of his regular work. This was shown by witnesses other than the plaintiff. No attempt was made by defendant to show that it was not true, and defendant must have known whether plaintiff's duties included section work or not. The question at issue was whether he was in the line of his duty at the time he was injured. The evidence showed without contradiction that he was.

If on the former trial the plaintiff was induced by the skillful cross-examination of defendant's attorney to make statements contrary to the facts, he should not be nonsuited for telling the truth about the matter now.

II.   Appellant claims the demurrer should have been sustained because there was no proof of actionable negligence on the part of the defendant. The evidence showed without contradiction that there was a heavy fog the morning of the accident, and that such fogs were of frequent occurrence along the river at that point; that it was necessary for section men to pass along the track in foggy weather in a hand-car and that hand-cars were to be expected upon the track; that it was the custom for trains running through such fogs to run slowly, ten or twelve miles an hour, sound a whistle at frequent intervals, and ring the bell continuously. The defendant objected to the word

**Demurrer to Evidence.**

"custom," but all of defendant's witnesses testified that it was the uniform "practice" to blow the whistle and sound the bell at such times. One of plaintiff's witnesses said it was the custom to blow the whistle at such times every fifty or seventy-five yards.

The appellant now says there is no substantial evidence to show negligence in failing to observe the custom or practice. It is also argued that the noise of the hand-car would prevent to some extent those on it from hearing the bell or whistle, and that the train which passed on the other track immediately before the collision probably made such a noise as to drown the sound of the bell and whistle. The plaintiff testified that he could hear the whistle half a mile when it sounded. He said he and the crew were propelling the hand-car and *listening* and looking for trains. He did not hear either the whistle or the bell. Appellant introduced witnesses, including the engineer, fireman, conductor and brakeman, to testify that the whistle was sounded and the bell rung. Some of them testified that the bell was rung continuously and that the whistle was sounded at intervals. None of them were very definite as to just when or how often the whistle was sounded. The engineer said he sounded the whistle at intervals of two or three minutes. He was running twenty-five miles an hour. As nearly as he could "*recall*" he sounded the whistle twice after he crossed the Milwaukee bridge, which was a mile and a quarter from the place of collision. There is no positive evidence on the part of the defendant that the whistle was sounded at all within a half mile of the place of collision. The testimony of the plaintiff is positive that it was not sounded. This is not ordinary negative evidence, such as given by an inattentive witness who is not interested in noticing whether a certain signal is given,—such testimony as is frequently given in railroad cases where a bystander testifies he didn't hear a whistle, or a bell. [Dutcher v. Railroad, 241 Mo. l. c. 169.] Here were six men on a hand-car, every one of them directly and intensely inter-

ested in hearing any whistle or bell that might be sounded; their lives depended upon their hearing; they were listening for the purpose of hearing. That none of them heard is a reasonable inference, because, if any one of them had heard the whistle or the bell the others would have been notified and the hand-car removed from the track. Upon this evidence it was a question for the jury, whether the defendant was negligent in failing to sound the whistle with sufficient frequency to warn the parties on a hand-car, or any employee who might be in a dangerous position on the track.

Another act of negligence alleged was the excessive speed. The appellant claims the speed of twenty-five miles an hour was not the proximate cause of the collision, because it is not shown that it could have been avoided if the train had been running at a lower rate of speed. It is pure assumption to say that a train running at half the speed would have caused the same injury, or one like it. If the train had been running at half the speed from the time it crossed the river, the hand-car would have been to its destination and off the track. If not, the men on the hand-car would have had double the time in which to jump for their lives after they saw the train appearing in the fog; the force of the collision, if there had been one, would necessarily have been much less. It was a question for the jury as to whether an excessive rate of speed was the cause of the injury.

It is possible that the noise of the hand-car and the confusion of sounds caused by the train which had just passed may have prevented those on the hand-car from hearing the bell, or, if they heard it, from locating its direction; but all that was for the jury to consider in determining whether proper care was exercised.

III. The appellant assigns error to the giving of Instruction A, the principal instruction given on behalf of the plaintiff, which told the jury it was the duty of the defendant "to frequently and at short intervals to sound the bell and whistle on said train."

Frequently.

The objection is that the instruction did not define the word ''frequently'' nor tell the jury what was meant by it. The instruction did tell the jury that the whistle should be sounded ''as a warning of the approach of said train to those on said hand-car.'' It is apparent that the whistle should be sounded frequently enough to serve that purpose. It was for the jury to say whether or not that was done. If the instruction had told the jury that frequently meant every hundred yards, or every quarter of a mile, or anything of that kind, defendant's counsel would have been urging more valid objection to the instruction.

IV. In an instruction on the measure of damages the jury were told that if they found the plaintiff failed to exercise ordinary care for his own safety, then the damages, if any were awarded, should be diminished accordingly. Then a further instruction, D, given for the plaintiff, defined contributory negligence as a failure on the part of the plaintiff to exercise ordinary care, any negligent act or omission of plaintiff which concurred with the negligence, if any, of defendants, in causing the injury, and then continued: ''You are further instructed, however, that if you should find from the evidence that plaintiff was guilty of contributory negligence, yet the Act of Congress under which this suit is brought, provides and you are instructed, that contributory negligence, unless the sole cause of the injury, does not defeat a recovery altogether, but the damages, if any awarded, shall be diminished by the jury in the proportion which the contributory negligence, if any, of plaintiff bears to the combined negligence, if any, of both plaintiff and defendants, and your finding shall be in accordance herewith.''

The appellant asserts that the use of the words ''contributory negligence'' assumes that appellants were negligent and eliminates at once the idea that plaintiff's negligence could be the sole cause of the accident. The

jury had been told in the other instructions that they must find the defendant was guilty of negligence in several particulars in order to authorize a verdict for the plaintiff. It is attributing to the jury an unusual subtlety to suppose they would apply such refinement of reasoning to the interpretation of the word "contributory." This instruction is based solely on the defense of contributory negligence. It does not authorize a verdict on any finding whatever. It simply calls attention to that defense and tells the jury what is necessary to prove in order to defeat recovery on that ground. It does not affect or purport to affect the main issues of the case as put to the jury in the other instructions, and is not erroneous.

V.   The defendant offered in evidence the opinion of the Kansas City Court of Appeals, as the same is reported, rendered when the case was before that court on appeal from the former trial. In that opinion the Court of Appeals in its analysis of the facts finds that the plaintiff was a track-walker and was not in the discharge of his duty at the time he was injured. Appellant has offered no authority nor any reason why this evidence should be admitted. It is not only pure hearsay, but a conclusion from the facts and not competent evidence or any theory.

**Opinion on Appeal.**

VI.   The appellant complains of the instruction given for plaintiff on the measure of damages. This instruction, after telling the jury they should take into account the nature of the injuries, bodily pain and mental anguish, if any, suffered by the plaintiff, and such as the jury should find the plaintiff has suffered and would suffer in the future, his medical expenses, not exceeding $200, "impairment of his ability, if any, to work and earn money resulting directly from such injuries," then directed them to award plaintiff, "the present cash value of such sum in damages as the jury shall find and believe from the evidence will fairly and reasonably compensate him for

**Present Cash Value.**

his mental and physical pain, if any, his medical expense, if any, and his pecuniary loss, if any, resulting directly from any impairment, if any, of his earning power, all as above restricted and set out, and resulting directly from such injuries, if any, so received."

The objection to that instruction is the use of the expression "present cash value." Appellants argue that it allows the jury to estimate plaintiff's loss of earnings in 1914 by the present standard of earnings when wages are much higher. An analysis of the instruction shows that the award of damages authorized were on account of (a) physical and mental pain, past and future; (b) medical expenses; (c) impairment of *earning power*. The jury were not authorized to give plaintiff damages for loss of "*earnings*," a totally different thing from loss of earning power.

In awarding damages for impairment of ability to earn money, the jury necessarily must base their estimate upon the present disability, whether it is permanent or curable. They must estimate the probable duration of it, just as in a death claim they estimate the expectancy of life of the person killed, and the pecuniary loss to the widow or children. They must give a lump sum as their measure of the present value of the loss. [8 R. C. L. p. 479; Morton v. S. W. Tel. & Tel. Co., 280 Mo. 360, 217 S. W. 835; Hurlburt v. Bush, 224 S. W. l. c. 327; McWhirt v. C. & A. R. R. Co., 187 S. W. 830, l. c. 836.] It was the rule applied by this court in the case of Greenwell v. C. M. & St. P. Ry. Co., 224 S. W. 404, l. c. 410. The loss of earning power was estimated and compensation allowed at the present value of such compensation.

Should a different rule be applied in estimating compensation for pain and suffering, when it is continuing? If the suffering were wholly in the past it might be well to direct the jury to consider only compensation reasonable at the time the suffering was incurred. But when the estimate must include suffering past, present and future, covering a long period of time before the trial—

five years in this case—what is the jury to do? Estimate the cash value of the compensation in 1914, and subsequent years separately? Or divide the time in monthly periods and figure out the pain and suffering of each month? Instructions indicating the present value of the compensation for suffering have been held proper. [Reynolds v. Transit Co., 189 Mo. 420.] Such sum as "will reasonably compensate him" was held correct in Dean v. Railroad, 199 Mo. l. c. 393. "Such sum as you find *will be reasonable compensation* to her for mental and physical pain and suffering" (past and future) was approved as the proper measure in Krinard v. Westerman, 279 Mo. 680, 216 S. W. l. c. 942. "Will reasonably compensate" and "will be reasonable" cannot mean anything else than measured by present cash value.

If the instruction is somewhat vague in directing how to make the estimate, the appellant cannot complain because it offered no instruction on the subject. [Hurlburt v. Bush, 224 S. W. l. c. 327; Powell v. Railroad, 255 Mo. l. c. 454; Breen v. United Rys. Co., 204 S. W. l. c. 523.]

VII. It is claimed that the verdict is excessive. The evidence shows the plaintiff was fifty-three years old at the time of the trial. He was not allowed to recover anything for loss of earnings. The pain and suffering which he incurred and the impairment of earning capacity was all that could be considered by the jury, except his medical expenses of $200. The evidence showed that he was thrown down an embankment and lodged against a tree. The physician who examined him found a hernia in the region of the stomach and also an inguinal hernia and a discolored lump on the right side of the spine in the region of the kidney. There was blood in the plaintiff's urine afterwards. He was treated for several months. At the time of the trial he was nearly cured; there was no evidence visible of the inguinal hernia. The physician, however, stated that he had observed some difference in "impluse,"

*Excessive Verdict.*

on that side from the other side.  Owing to the disuse of muscles on the left side they had become atrophied somewhat.  There was a weakness in the muscles of that side. The physician also noticed a tendency to break out in a profuse unnatural perspiration.  He attributed that to a nervous condition.  Physicians for the defendant testified that they found nothing wrong with the plaintiff at the time of the trial.  It is difficult to believe that his injuries were permanent, although they were painful. The only thing that remained at the time of the trial was some discomfort and a certain weakness of partially atrophied muscles on the left side, making it difficult for him to lift things.  Considering the elements of damage which the jury were allowed to take into account, and the nature of the injuries, we think the verdict was excessive to the amount of five thousand dollars.  If the plaintiff will, therefore, within ten days from the delivery of this opinion remit from the amount of h s judgment five thousand dollars as of the date of the ju lgment, the judgment will be affirmed; otherwise, it will be reversed and remanded.  *Railey, C.,* not sitting; *Mozley, C.,* concurs.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court.  All of the judges concur, except *Walker, J.,* who concurs in opnion filed.

WALKER, J. (concurring).—I concur in this opinion, except as to the affirmance conditional upon the entry of a *remittitur* in the amount of the verdict.  I deprecate the custom arbitrarily, as I construe it, exercised by appellate courts, in reducing the amount of verdicts.  The triers of the fact are much better qualified to pass fairly upon this question than a judge sitting snugly in his chambers with nothing to direct his judgment or influence his conclusion, except the cold record.  If this verdict shocked the moral sense, in that it was out of all proportion as a compensation for the injuries infl sted, ample

opportunity was afforded for an intelligent reduction of same in the trial court. This not having been done, we should hesitate to interfere, unless the amount of the verdict is glaringly excessive, in which event the case should be reversed and remanded for a new trial.