Roy HONEYCUTT (Plaintiff), Respondent,

v.

WABASH RAILROAD COMPANY, a Corporation (Defendant), Appellant.

No. 29695.

St. Louis Court of Appeals.

Missouri.

June 4, 1957.

Rehearing Denied July 1, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied July 1, 1957.

Ely, Ely & Voorhees, Robert C. Ely, St. Louis, John L. Davidson, St. Louis, of counsel, for appellant.

Terry, Jones & Welton, Kansas City, Charles E. Gray, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action by an employee of the defendant company to recover damages arising out of an injury that he sustained in the course of his employment. It was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and resulted in a verdict for the plaintiff in the sum of $11,500. A remittitur was ordered and the plaintiff did remit $7,000. From the resulting judgment for $4,500 the defendant prosecutes this appeal.

It was alleged in the plaintiff's petition that he had been employed for some time as a car man in the yards of the defendant. It was further alleged that on November 10, 1954, plaintiff was working underneath a car with a rivet gun, and that while moving about under the car the gun suddenly discharged a metal clip which struck the plaintiff, lacerating his forehead.

It was averred that "defendant negligently failed to furnish and provide plaintiff with a reasonably safe place to work and reasonably safe tools to work with in that defendant provided a rivet gun with an unprotected trigger when, in the exercise of ordinary care, defendant knew, or should have known, that in the use of said equipment in the performance of his duty, plaintiff was likely to be injured."

The allegations of negligence were denied by the defendant's answer and the issues thus presented were tried upon the following evidence.

The plaintiff was a man thirty-five years of age and had worked in the defendant's car repair department for about seven years. During about four years of that time he had been using pneumatic rivet guns in the course of his work. There were two types of guns. The operational parts are enclosed in a cylinder about three inches in diameter. In the front end of this cylinder is a plunger which is a short cylindrical shaft. On the end of the plunger is a snap, the striking part of the tool, which hits the rivet. On the back end of the gun is a large grip, shaped like a pistol grip, and a trigger. Attached to the cylinder is an air hose, the other end of which is attached to an air compressor. The air pressure maintained is about ninety pounds.

When in operation the gun is held with the left hand grasping the cylinder and the right hand holding the grip. Thus holding the gun the snap is pressed against the end of a rivet and, by the trigger, compressed air from the hose connected to the gun is released into the mechanism which causes the plunger to vibrate and to pound the snap against the rivet. Upon releasing the trigger the gun stops. The two types of guns are alike in all respects except that the trigger on one is towards the top and on the outside of the grip. It is operated by pressing with the right thumb while the grip is held by the four fingers of the right hand. The other gun has the trigger between the cylinder and the grip and to activate the gun it is squeezed in the manner of a pistol trigger. Both guns will discharge the plunger and the snap into the air if the gun is triggered without holding the snap against a rivet or something to prevent it from flying out.

The plaintiff with a crew, consisting of himself and two others, was engaged in riveting plates on the bottom of a freight car which was jacked up so that he had a vertical space of about four feet in which to work. He sat on a nail keg during the operation and the plates that he riveted were about six inches or a foot above his head. The other two members of the crew were in the car above him. One of them heated the rivets and placed each heated rivet in a hole in the plates and frame. The other held a bucking pail against the head of the rivet and the plaintiff then applied the rivet gun from below to flatten the bottom head upon it.

The plaintiff testified that the day before he was injured he went to the office where the guns were kept and that there were two guns there. One had the trigger on the inside of the grip and the other had the trigger on the outside. He started to get the gun with the trigger on the inside and told the foreman that he preferred it, but he was directed to take the other gun. He worked that day with the gun having the outside trigger. The next day he had the same gun and after the crew had finished riveting one part of the car he prepared to move to another place. He was seated on the nail keg and preparing to move when he reached down and picked up the gun. It went off. The snap and plunger came out and struck the car. The snap glanced back and struck the plaintiff's forehead. He said that he wore at the time a canvas apron and that as he reached for the gun the trigger probably brushed against the apron and caused it to eject against the plunger and snap.

One of the crew, testifying on behalf of the plaintiff, said that he had used the gun in

question and that it was "kind of quick" and that he told the foreman it was "trigger happy". He said that according to his best recollection they had always had two rivet guns with the triggers on the inside before they received the gun in question.

Another workman testified by deposition that in working under a car there was a reasonable likelihood that a gun with the trigger on the outside would discharge the plunger and snap. This could only occur if the trigger was bumped against something or accidentally pushed. He said that you would not accidentally hit the trigger when it was located on the inside of the handle of the gun. He also stated that some time prior to the accident they had only guns with the inside triggers.

On behalf of the defendant the foreman testified that they had always had one of each type of guns and that the one with the trigger on the inside was out of repair at the time of the accident. He said that he had done riveting for many years and preferred the gun with the outside trigger as it afforded better control. This was by reason of the fact that one did not need to relax his hold on the grip to press the trigger as was the case with the inside trigger.

A manager for Ingersoll-Rand Company, which manufactured both guns, testified that both types were widely sold. It was a matter of preference. He said that the operator wore heavy gloves and that in picking up the guns with the inside trigger he was apt to take the trigger with the grip and cause it to accidentally discharge. Both guns sold for the same price and the one with the outside trigger was preferred by a ratio of about two to one.

The foregoing constituted the pertinent testimony as it related to liability and the case was presented to the jury upon the theory that the defendant could be found negligent if it furnished plaintiff with a rivet gun with an unguarded trigger and that such a gun was not a reasonably safe piece of equipment for the work in which the plaintiff was engaged. The defendant maintains that the evidence was insufficient to support a verdict and that the court erred in overruling its motion for a directed verdict. The plaintiff conversely contends that there was sufficient evidence that the gun with the unprotected trigger was not as safe as a gun with a protected trigger and that this was a sufficient basis upon which to predicate negligence.

45 U.S.C.A. § 51, provides that a carrier shall be liable for damages to any persons suffering injury or death "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." It will be seen that the act does not enlarge upon the conception of the negligent acts or omissions that we have heretofore considered essential to a recovery, and we therefore have no logical guide except the common law. Dow v. Carnegie-Illinois Steel Corp., 3 Cir., 165 F.2d 777; Watkins v. Thompson, D.C., 72 F.Supp. 953; Whitaker v. Terminal Railroad Ass'n of St. Louis, Mo.App., 224 S.W.2d 606. The act does remove common-law defenses that were previously available and any negligence of the employer, however slight, contributing to the injury is sufficient to make a submissible case. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Herdman v. Pennsylvania Railroad Co., 352 U.S. 518, 77 S.Ct. 455, 459, 1 L.Ed.2d 508. But it is nevertheless true that there must be evidence of some negligence. Herdman v. Pennsylvania Railroad Co., 352 U.S. 518, 77 S.Ct. 455, 459, 1 L.Ed.2d 493.

In support of his stand that a submissible case was made, plaintiff cites us to Cleghorn v. Terminal Railroad Ass'n, Mo., 289 S.W.2d 13; Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282; Carver v. Missouri-Kansas-Texas R. Co., 362 Mo. 897, 245 S.W.2d 96; Stone v. New York,

C. & St. L. R. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441; Grosvener v. New York Central Railroad Co., 343 Mo. 611, 123 S.W.2d 173; Bolan v. Lehigh Valley R. Co., 2 Cir., 167 F.2d 934; Pittsburgh, C., C. & St. L. Ry. Co. v. Cole, 6 Cir., 260 F. 357. The charges of negligence in these cases are as follows: Cleghorn v. Terminal Railroad Association deals with the negligent failure to illuminate a switch stand in a dark railroad yard. In Urie v. Thompson the charge was the use of a faultily adjusted sanding device. Carver v. Missouri-Kansas-Texas R. Co. had to do with an unsecured bridge brace. In Stone v. New York, C. & St. L. Railroad Co. the plaintiff was directed to pull a tie beyond his capacity when a safe and accepted procedure was available. Grosvener v. New York Central Railroad Co. was predicated upon a failure to warn. Bolan v. Lehigh Valley Railroad Co. dealt with a defective step. All of these relate to acts or omissions which are commonly recognized as sufficient to make a submissible case under the Federal Employers' Liability Act.

The last case, Pittsburgh, C., C. & St. L. Railway Co. v. Cole, had to do with a pneumatic hammer or gun similar, we assume, in some respects to the tool involved in this case. The difference is that the type used had a safety spring that could be attached to prevent the hammer from flying out when air was admitted. The charge of negligence was a failure on the part of the employer to supply plaintiff with a safety spring. There was evidence that such springs were available and that it would have held the hammer in place. This also is a recognizable act of negligence but the facts differ from the case before us in that here the tool furnished was a complete tool and there was no evidence that it could be guarded or made more safe. The case was presented and tried upon the theory that another tool of a different design would have been less hazardous.

The common-law rule as we have known and pronounced it in Missouri is that the master "is not bound to furnish the newest and best. He performs his duty when he furnishes those of ordinary character and of reasonable safety. Absolute safety is unobtainable and, we repeat, employers are not insurers." Fischer v. City of Cape Girardeau, 345 Mo. 122, 131 S.W.2d 521, 525. This view expressed finds sanction in McGivern v. Northern Pacific Ry. Co., 8 Cir., 132 F.2d 213, loc. cit. 218, wherein the court held: "The employer is not required to furnish the newest or even the safest and most approved devices if the employee is not deceived as to the degree of danger to which he is subjected."

There are several quite obvious reasons for this rule, one of which was stated in Canadian Northern Railway Co. v. Walker, 8 Cir., 172 F. 346, loc. cit. 352, 24 L.R.A., N.S., 1020, in which the court said: "Skilled and experienced railroad operators are more competent than jurors or judges to choose methods of operating railroads, and when a railroad company, as in this case, has selected and adopted a customary method of loading and unloading its cars and of removing temporary obstructions necessarily used in that work, which is neither palpably unreasonable nor clearly dangerous, it owes its servants no duty to adopt a different method, and it cannot be held guilty of negligence because it has not done so."

There was no charge that the gun was defective. There was no evidence that the gun was not of the type in common usage and that such usage was that which ordinary prudent persons would employ under similar circumstances. Nor was there any evidence that the outside trigger could have been guarded. The gun would not go off without pressure upon the trigger. The fact that work was being done under the car presented no unusual situation since the car had been elevated to a height sufficient for the work underneath.

The plaintiff's evidence sifted down to its real substance is that the employee preferred a different tool which he considered less dangerous. If this was sufficient then the employer could be held liable for the next man hurt at riveting with a tool of the other type if that man happened to consider it the more dangerous of the two tools.

It appears therefore that there was no evidence upon which the employer could be held negligent, and it is the recommendation of your Commissioner that the judgment be reversed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.