Roy **HONEYCUTT** (Plaintiff), Respondent,

v.

**WABASH RAILROAD COMPANY, a Corporation** (Defendant), Appellant.

No. 29695.

St. Louis Court of Appeals.

Missouri.

May 6, 1958.

Motion for Rehearing or for Transfer to Supreme Court Denied June 5, 1958.

Ely, Ely & Voorhees, Robert C. Ely, St. Louis, John L. Davidson, Jr., St. Louis, of counsel, for appellant.

Terry, Jones & Welton, Kansas City, Charles E. Gray, St. Louis, for respondent.

HOUSER, Commissioner.

On the original appeal we held the evidence insufficient to support a finding of negligence and reversed a judgment for plaintiff. Honeycutt v. Wabash Railroad Co., Mo.App., 303 S.W.2d 153. Reference is made to that opinion for a concise resume of the pleadings and evidence. On certiorari to the United States Supreme Court our judgment was reversed and the cause was remanded to this court for proceedings in conformity with the opinion of that court holding that "the proofs justified with reason the jury's conclusion that employer negligence played a part in producing the petitioner's injury." Honeycutt v. Wabash Railway Co., 355 U.S. 424, 78 S.Ct. 393, 2 L.Ed.2d 380.

In conformity with the opinion of the United States Supreme Court we hereby set aside and vacate our judgment of June 4, 1957 and now hold that plaintiff's evidence made a submissible case of negligence under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The cause has been reargued and resubmitted in this court. The appeal is now before us for review of certain points raised in defendant's brief but left undecided on the original appeal to this court upon our finding that plaintiff made no submissible case, and not decided by the United States Supreme Court.

First, did the trial court err in overruling defendant's objections to the testimony of the witness Earl L. Farris? Farris testified that the day previous to the accident he had used the same gun involved in plaintiff's accident; that he found that the "trigger worked kind of quick;" that on one occasion when he reached down to pick up the gun it went off, and that he had told defendant's foreman that "this thing is trigger-happy." Defendant claims that this amounted to testimony that the gun was defective; that it came as a surprise; that

defendant was not prepared to defend against such a claim in view of the fact that the petition contained no allegation that the gun was defective but alleged only that defendant was negligent in furnishing a gun with an unprotected trigger.

■ Assuming but not deciding that the question of the admissibility of this testimony is a non-federal question properly reviewable here,[1] we resolve the question in favor of plaintiff. If it could be inferred from Farris' testimony that the trigger of this gun tripped more easily than that of other guns of the same type and if that be a "defect" upon which negligence can be predicated, it is nevertheless a fact that plaintiff made no attempt to count upon this "defect" as a separate charge of negligence. It was not so pleaded. It was not instructed upon. It was not argued to the jury. The only issue of negligence drawn by the pleadings, instructed upon and argued to the jury was that of providing a rivet gun with an unprotected trigger. Even if the admission of this testimony had been erroneous it would not have required the setting aside of the verdict and judgment. From the record it does not appear that the jury was affected by this evidence. There has been no showing of prejudice or unfairness in the admission of this testimony or that its admission materially affected the merits of the action. See Renner v. Wolverton, Mo.Sup., 273 S.W.2d 325; Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W.2d 386. But we find no error in the admission of this testimony. It was admissible on the issue of the necessity of having a trigger guard to protect the trigger from tripping too easily. The specific fault or neglect with which defendant was charged was the failure to provide plaintiff with a gun with a trigger guard.

The failure to provide protection against the too-easy tripping of the trigger was the crux of the charge of negligence. The characteristics of the particular gun with reference to the ease with which the trigger could be tripped were germane to that charge. The easier it was to trip the trigger the greater was the danger to be anticipated in providing an employee with a gun with an unguarded trigger. There is no substantial basis for a claim of surprise. Defendant might reasonably have anticipated the introduction by plaintiff of evidence with reference to the ease with which the trigger could be tripped.

Second, did the trial court err in giving Instruction No. 7? Defendant claims that No. 7 improperly permitted the jury, in awarding damages, to take into consideration the future impairment of plaintiff's earning capacity. Citing Dehn v. Thompson, Mo.App., 181 S.W.2d 171; Edmonston v. Kansas City, 227 Mo.App. 817, 57 S.W.2d 690, and Stupp v. Fred J. Swaine Mfg. Co., Mo.Sup., 229 S.W.2d 681, defendant asserts that there is no basis in the evidence for this item of damages; that the only testimony relating to loss of time from work during the 17 months from time of injury to time of trial is that plaintiff lost the balance of the day of his injury and two days for a week-end trip to Decatur, Illinois for a medical examination; that there is no evidence that plaintiff will lose any earnings in the future. Plaintiff, citing McGarvey v. City of St. Louis, 358 Mo. 940, 218 S.W.2d 542, and Baker v. Norris, Mo.App., 248 S.W.2d 870, contends that the submission of future impairment of earning capacity was warranted for the reason that plaintiff's evidence conclusively showed that he had sustained a permanent injury and that this alone warranted the submission of the issue.

---

1. A troublesome question, considering the close relation between the question whether sufficient facts were introduced to support a finding of negligence in furnishing a gun with an unprotected trigger and the question whether the fact that the unprotected trigger on the gun tripped too easily was admissible in evidence. See Rogers v. Thompson, Mo. Sup., 308 S.W.2d 688, loc. cit. 692[2], and cases cited.

Plaintiff, a car-man in the repair department since 1947, was injured on November 10, 1954. Prior to the accident he had nothing wrong with him physically. When the rivet gun discharged plaintiff was struck in the left temple and left eye. His head began to throb. Plaintiff took the rest of the day off and was treated by Dr. Winthrow who sewed up the wound and put a pressure patch on his eye. Two days later plaintiff had a continuing dull headache and throbbing in his temple. His eye was black and blue for a few days. The pressure patch was removed in one week, after the wound had healed. Plaintiff remained under the care of Dr. Winthrow until April, 1955 when he was sent to Decatur, Illinois for examination by an eye doctor. X-rays were taken. He was at Decatur for two days. Plaintiff was given two prescriptions for eyeglasses. Dr. Winthrow gave plaintiff medicine to relieve his headaches. Except for the date of his injury and the two days at Decatur plaintiff worked every day from the date of injury until the time of trial, which commenced on April 2, 1956. A co-worker testified that plaintiff complained quite often that his head and eyes hurt him. At trial time he testified his eyes burn in the early morning, his head starts throbbing with pain and he suffers headaches every day beginning about 9 or 10 o'clock a. m. Later in the day it becomes worse. It is like a toothache throbbing. Sometimes when he wakes up in the morning the headaches are gone. Plaintiff obtains relief from Anacin, Bufferin and Aspirin. Medical witnesses testified that there was only a 10% chance of ameliorating the headaches by conservative treatment; that surgical treatment would be necessary which would require the cutting of some fibers at the base of the brain by cutting into the gasserian ganglion; that plaintiff's headaches arose from a neuritis affecting a branch of a facial nerve and that the headaches are permanent. As a result of these injuries plaintiff has given up many outside activities. Often he goes to bed "right after supper, maybe 6 or 7

o'clock." He cannot "go on gatherings and things like we used to." He has given up reading, "all but glancing through newspapers," because his head starts hurting worse and his eyes burn. His eye "waters all the time—when I wake up in the morning it's bloodshot and burning."

■ By Instruction No. 7 the jury was directed, upon finding the issues for plaintiff, to assess damages for bodily injuries and in so doing to take into consideration among other things "3. The future impairment, if any, of plaintiff's earning capacity directly resulting from said injuries." The inclusion of this element in the instruction constituted reversible error for the reason that there is no evidence in the record to sustain such submission. There is no evidence of disability to work in the future, or of plaintiff's expectancy of life, see Rigley v. Prior, 290 Mo. 10, 233 S.W. 828, loc. cit. 832, or of plaintiff's actual earnings before the injury. Freyman v. United Rys. Co. of St. Louis, Mo.App., 236 S.W. 902. There is no evidence to guide the jury in determining the extent to which his earning capacity in the future will be impaired or the amount of money it will take to compensate for any such impairment. See 15 Am.Jur., Damages, § 92. Instruction No. 7 authorized an award for impairment of earning capacity in the future, which refers to the loss of pecuniary benefits, Lanasa v. Downey, Mo.App., 201 S.W.2d 179, loc. cit. 184, and includes the probable loss of wages and earnings in the future resulting from plaintiff's injuries. Evans v. Farmers Elevator Co., 347 Mo. 326, 147 S.W.2d 593, loc. cit. 601. In such case substantial evidence must be introduced from which the extent of such pecuniary loss may be estimated with reasonable certainty. Seymour v. House, Mo.Sup., 305 S.W.2d 1; Lanasa v. Downey, supra, 201 S.W.2d loc. cit. 185; Dehn v. Thompson, supra; Edmonston v. Kansas City, supra; Grattan v. Suedmeyer, 144 Mo.App. 719, 129 S.W. 1038; Davidson v. St. Louis Transit Co.,

211 Mo. 320, 109 S.W. 583. In Seymour v. House [305 S.W.2d 6], supra, an instruction on damages submitted "impairment, if any, of plaintiff's ability to work and earn money hereafter" as an item of damages. A judgment for plaintiff was reversed for insufficiency of evidence to sustain the giving of the instruction. The Supreme Court, Eager, J., 305 S.W.2d loc. cit. 6, said:

> "And, on the same principle, there should have been substantial evidence of the supposed past loss of earnings to support a finding on the value of the supposed impairment of plaintiff's ability to work and earn in the future; any finding of such 'impairment' and its pecuniary value must be based upon evidence which would permit the jury to arrive at a reasonable estimate of the future loss; it may not rest merely upon speculation."

And in the same case, 305 S.W.2d loc. cit. 7:

> "It was clearly prejudicial to allow the jury to speculate upon supposed lost earnings, past or future, without substantial evidence upon which it might intelligently base an estimate."

■ The McGarvey and Baker cases cited by plaintiff and other cases cited infra refer to or apply the rule that proof that plaintiff suffered a permanent injury is sufficient evidence for a recovery for loss of future earnings. For that rule to apply, however, there must be a causal relationship between the permanent injury and the impairment of ability to work. The nature and character of the permanent injury must be such that it will necessarily interfere with plaintiff's working capacity or impair his earning power so that it is reasonably certain that he will suffer some loss of earnings in the future. Examples: Adams v. Atchison, T. & S. F. Ry. Co., Mo.Sup., 280 S.W.2d 84, in which plaintiff sustained permanent injuries which "adversely affected his ability to do work and labor and earn money and which will continue to do so." 280 S.W.2d loc. cit. 93. Bishop v. Musick Plating Works, 222 Mo.App. 370, 3 S.W.2d 256, in which plaintiff, a buffing machine operator, was left with only 10% vision in his left eye as a result of his injury. Taylor v. Terminal R. Ass'n of St. Louis, Mo.App., 112 S.W.2d 944, in which plaintiff, a manual laborer, employed at trial time as a WPA worker wheeling dirt in a wheelbarrow sustained a sacroiliac injury which caused pains in his back when bending back and forth. Dean v. Kansas City, St. L. & C. R. Co., 199 Mo. 386, 97 S.W. 910, in which plaintiff, a day laborer, as a result of his injury had a serious and permanent knee condition which completely destroyed his ability to labor from time of injury to time of trial. McGarvey v. City of St. Louis, supra, in which as a result of injuries to her back, leg, knee and thigh plaintiff, a machine operator, was prevented from working at her machine "as steady" as before. Her injuries "slowed her up." Her left leg would "give out" so that she would have to go home. Baker v. Norris, supra, in which plaintiff, an automobile plant employee whose work required bending, stooping and lifting, received permanent injuries which affected his ability to do that kind of labor. In these cases there was an impairment of or interference with plaintiff's ability to do work and labor and earn money and the facts were such that it was reasonable to infer that that status would continue into the future. Not so in the instant case. While there was evidence that plaintiff suffers considerable pain and distress which limits his outside activities during *non-working hours,* there is a complete absence of evidence that the residual condition (severe headaches) has impaired or interfered with his ability to perform the duties and tasks of his daily employment or has resulted in any loss of time from work, or the loss of a single dollar of earnings, or that the headaches are of such a nature and character that such loss, interference with or impairment of his ability to work or earn money in the future rea-

sonably may be expected. On the contrary the evidence affirmatively shows that for almost 17 months after his injury plaintiff worked steadily, without any loss of time from his work except the remainder of the day he was injured and two days spent undergoing physical examination.

Plaintiff's only injury was a blow on the head, which produced none of the symptoms of a serious concussion, see Karnes v. Ace Cab Co., Mo.App., 287 S.W.2d 378, loc. cit. 383, except a contusion, a black eye and continuing headaches. There were no broken bones. There was no crippling, no disfigurement. No hospitalization was required. There was no proof of any item of special damage, such as lost wages, doctors' bills, medical expenses, X-rays, etc. Nevertheless, the jury, armed with Instruction No. 7 by which they were authorized to award damages for future impairment of earning capacity, returned a verdict in the substantial sum of $11,500. In ordering a remittitur of $7,000 the trial judge filed a memorandum in which he pointed out the complete failure of plaintiff to prove damages. Considering all of the circumstances in this case we are convinced that a substantial amount was allowed for future impairment of earning capacity, a non-allowable item of damages upon this record. Error materially affecting the merits of the action requires that the judgment be reversed, but the issue of liability having been set at rest in favor of plaintiff the Commissioner recommends that the cause be remanded for a new trial on the issue of damages only.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

In conformity with the opinion and mandate of the United States Supreme Court the judgment of this court dated June 4, 1957 is vacated and set aside. Upon the resubmission of this cause and in accordance with the opinion of the Commissioner the judgment of the circuit court is reversed and the cause is remanded for a new trial on the issue of damages only

RUDDY, P. J., ANDERSON, J., and JOHN K. REGAN, Special Judge, concur.