HAZEL BROWN, Administratrix of Estate of HAROLD BROWN, v. CHICAGO ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Division One, July 30, 1926.

**1. LICENSEE: Student Fireman.** A student fireman riding upon an engine of an interstate railroad train, under permit from the company directed to all engineers, for the purpose of qualifying as fireman, and subject to the orders and under the control of the engineer and fireman, and while so riding engaged in helping to fire the engine, run the stoker, shovel coal and clean the pans of cinders, is not a mere licensee, but an employee, although he receives no pecuniary pay for his services. Where the company retains the right to direct the manner in which he shall do the work assigned to him and the engineer and fireman instruct him how it should be done, and he does the work assigned to him in obedience to their orders, the relation between him and the company is that of master and servant.

**2. PROXIMATE CAUSE: Deceased's Own Negligence: Looking Back for Train: Range of Vision.** There is no imperative rule of law which makes it negligence for a trainman rightfully walking upon a railroad track which for two years has been used by the public as a pedestrian way, during a period of six or eight minutes, to look back, if the track was clear when he entered upon it. The engineer and student fireman got off the engine of a freight train which had been stopped when another freight train ahead had

stalled because of a badly leaking main and drifting throttles and shaker trouble, and started to walk to the terminal yard office 2800 feet away, to make report. Escaping steam from the crippled engine ahead drifted westerly across a near-by track and to the west bank of a deep cut, 2280 feet long, through which the parallel tracks passed, and caused them to turn aside to walk upon the near-by parallel track, in order to pass around the escaping steam, and while enveloped by or emerging from the volume of steam and when they were about opposite the pilot of the engine from which the steam was escaping they were struck and instantly killed by a much-belated passenger train coming from behind them on the west track at a speed of thirty or forty miles an hour. The hiss or noise of the escaping steam and the sound of the blower on the crippled engine drowned the sound of the approaching passenger train, and it is apparent from the evidence that the train was not within the range of vision of the deceased, and was at least four hundred feet beyond his range of vision when he stepped upon the west tract opposite the escaping steam and started to walk ahead of it. The rules of the company limited the speed of the train to ten miles and the ordinances to twelve miles an hour at the place. On the point whether its whistle was sounded the evidence was conflicting, and there was no evidence that deceased did not look in the direction of the approaching train before entering the volume of steam upon the western track. The evidence shows a common user of the track by the public for a period of two years. **Held,** it cannot be ruled as a matter of law that deceased's own negligence was the proximate cause of his injury.

3. **PRESUMPTION OF DUE CARE.** Absent evidence to the contrary, the presumption will be indulged that deceased before entering upon a railroad track used due care for his safety.

4. **EVIDENCE: Refreshing Witness's Memory.** It is permissible, for the purpose of refreshing the memory of a witness, to direct his attention to statements previously made in his deposition pertaining to the subject-matter of his testimony; and it will not be ruled that the trial court abused its discretion in permitting counsel to direct his witness's attention to a certain question and answer upon a certain page of his former deposition, for the purpose of refreshing his memory, where the record does not show that the question and answer were read before the jury or whether they contradicted or conflicted with his testimony at the trial or whether they were used as a substitute for his testimony.

5. ———: **Reasonably Safe Engine: Conclusion.** Testimony of an expert witness that it was not a reasonably proper method of handling an engine to allow a volume of steam to escape therefrom and that the engine was not reasonably safe does not materially affect the merits of an action or invade the province of the jury, even when one of the issues is whether the use and condition of the engine from which steam escaped was unsafe and negligent as to deceased.

6. **INSTRUCTION: Based on Evidence: Sounding Whistle.** Where there was testimony that "from the amount of noise being made by the escaping steam which enveloped deceased a man should be able to hear the sound of a whistle" of another engine as it reached a bridge 400 feet away, it became a question of fact whether the whistle, if sounded, could have been heard at that distance.

7. ———: **Assumption of Fact: Possibility of Hearing.** An instruction which required the jury to find and believe from the evidence "that said passenger train did not sound any locomotive whistle while in said cut and that the whistle could have been heard by deceased if it had been sounded in said cut or while approaching it" does not assume that it was possible to have sounded the whistle within a reasonable distance.

**8.** ———: **Anticipation of Deceased on Track: Common User for Two Years.** The crew of a passenger train owes a duty to a railroad employee to anticipate his presence on a track where it has for two years been in common use by the public as a pedestrian way.

**9.** ———: **Measure of Damages.** In a case coming within the Federal Employers' Liability Act, where the questions whether deceased was guilty of contributory negligence or whether his negligence was the sole proximate cause of his injury are not to be ruled as matters of law, but under the evidence are questions for the jury, an instruction which predicates the measure of damages upon a finding that he was not guilty of contributory negligence is proper, and one which tells them that he cannot recover as a matter of law is properly refused.

**10. EXCESSIVE VERDICT: Student Fireman: Twenty Thousand Dollars.** Deceased was twenty-six years of age, and his life expectancy was 38.11 years. His wife was five months younger, and her expectancy approximately the same. He was survived by one child, a daughter, whose age was thirteen months. He was in good health and industrious. He had previously been employed at various vocations, for periods of six months to a year, and while so employed his earnings varied from $150 to $200 per month. At the time he was negligently killed by defendant's train, he was employed as a student fireman, and as such received no pecuniary pay for his services, and there is no evidence from which it may be inferred with reasonable certainty that he would have later qualified and entered defendant's employment as a fireman, nor evidence of the average earnings of a regular fireman. The wife, as administratrix, sues under the Federal Employers' Liability Act, for the pecuniary loss sustained by her and the daughter. **Held,** that under said act each case must depend largely upon the facts presented at the trial, and neither court nor jury can engage in unwarranted speculation, and the verdict for twenty thousand dollars is too large, but the judgment is affirmed for $17,500 upon condition that plaintiff remit $2500.

---

Corpus Juris-Cyc. References: **Death,** 17 C. J., Section 235, p. 1350, n. 6. **Evidence,** 22 C. J., Section 647, p. 547, n. 99; p. 548, n. 4; Section 778, p. 686, n. 55. **Master and Servant,** 39 C. J., Section 388, p. 268, n. 57; Section 505, p. 389, n. 69; Section 1206, p. 985, n. 85; p. 986, n. 86; Section 1374, p. 1199, n. 43; Section 1379, p. 1200, n. 56; Section 1384, p. 1202, n. 68; Section 1398, p. 1213, n. 26; Section 1403, p. 1222, n. 87; Section 1426, p. 1245, n. 71. **Witnesses,** 40 Cyc., p. 2449, n. 79; p. 2450, n. 81, 85, 86.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED *(upon condition).*

*Guthrie & Conrad* and *John C. Leopard & Son* for appellant.

*Platt Hubbell* and *Geo. H. Hubbell* for respondent.

SEDDON, C.—Respondent, who is the widow of Harold Brown, sues as administratrix of her deceased husband's estate for the benefit of herself and deceased's infant daughter to recover damages for his alleged wrongful death under the Federal Employers' Liability Act of April 22, 1908, as amended on April 5, 1910 (U. S. Compiled Statutes, secs. 8657-8665), and also under the Federal Locomotive Boiler Act of February 17, 1911, as amended on March 4, 1915 (U. S. Compiled Statutes, secs. 8630-8639 d.) This is a companion case to Kidd v. Chicago, Rock Island & Pacific Railway

Co., 310 Mo. 1, 274 S. W. 1079, the deceased, Harold Brown, having met instant death at the same time and in the same casualty in which Clyde Kidd was also instantly killed. The case at bar was tried upon substantially the same pleadings and the same evidence as the Kidd case, wherein we stated at considerable length and with particularity the substantive facts bearing upon the deaths of the two above-named employees of appellant. Consequently, it is unnecessary for us to re-state those facts in detail in the instant case, as we incorporate herein, by reference to the Kidd case, the facts so fully stated in our opinion in that case.

Harold Brown was a student fireman upon appellant's freight engine 3022 on the morning of October 24, 1922. The engine crew, consisting of Clyde Kidd, engineer, V. G. Breitenbucher, fireman, and Harold Brown, student fireman, left Eldon, Iowa, on the evening of October 23rd, and arrived at the north corporate limit of the city of Trenton, Missouri, about six o'clock on the morning of October 24, 1922. The crew had a train order to tie up the train on the east track between Tindall and Trenton if the sixteen consecutive hours of service prescribed by the Federal statute (U. S. Compiled Statutes, sec. 8678) expired before reaching the Trenton terminal yards. Pursuant to the train order, the crew of engine 3022 pulled onto the east track within the corporate limits of Trenton about six o'clock on the morning of October 24, 1922, and stopped some 100 or 150 feet behind another freight train drawn by engine 3002, which had been stalled with the pilot of engine 3002 standing about 200 to 215 feet southwardly from Rainbow Bridge, an overhead street crossing, located approximately 2480 feet south of the mile-station post and 2800 feet north of appellant's depot in Trenton. Engine 3002 had been stalled because of badly leaking main and drifting throttles and shaker trouble; and had been left standing with its pilot some 200 to 215 feet southwardly from Rainbow Bridge for a period of about an hour and a half before the casualty, with the cylinder cocks open, emitting a volume of steam on the right, or westerly side, of the engine, which steam was blown or drifted across the westerly track to the west bank of a deep cut, approximately 2280 feet long, through which appellant's two parallel railroad tracks pass before reaching the terminal at Trenton. The escaping steam tended to obscure a view of the westerly track immediately opposite engine 3002, and the hiss or noise of the escaping steam, and the sound of the blower in operation on engine 3002, tended to drown the sound of an approaching south-bound train on the westerly track. The crew of engine 3022, having tied up the train pursuant to order upon the expiration of the sixteen consecutive hours of service about 6:15 o'clock on the morning in question, were walking southwardly to

the yard office and wash-room to register, wash, and change their clothing, and, when about opposite the cab or gangway of engine 3002, they walked between the rails of the westerly track, in order to pass around the escaping steam from engine 3002, and, while enveloped by, or emerging from, the volume of steam, engineer Kidd and student-fireman Harold Brown were struck at 6:35 A. M. by the pilot of the locomotive of appellant's south-bound passenger train 57 at a point on the easterly rail of the westerly track about opposite the pilot of engine 3002. The decedents, Brown and Kidd, were thrown a distance of fifty or sixty feet and instantly killed. Appellant's passenger train 57 was two hours and forty-five minutes late and, when rounding a three-degree curve in the track under or near Rainbow Bridge, was traveling at a speed of approximately thirty to forty miles an hour, in violation of a rule of appellant railway company, in evidence, limiting the speed of all trains within the corporate limits of Trenton to ten miles per hour, and also in violation of an ordinance of the city of Trenton, in evidence, limiting the speed of trains within the corporate limits of the city to twelve miles per hour. A rule of appellant, also in evidence, required engineers to sound two long and two short blasts of the whistle when approaching public crossings at grade and obscure places. Appellant's engineers, Ellis and Kull, testified that the curve in the westerly track under Rainbow Bridge was an obscure place within the meaning of appellant's rule. Mable Street crossing, a public crossing at grade, intersected appellant's double tracks and right-of-way approximately 1000 feet southeasterly from Rainbow Bridge. Evidence was adduced that the usual or customary whistling point by south-bound trains for Mable Street crossing and the curve under Rainbow Bridge is about the beginning of the curve, 300 to 480 feet north of Rainbow Bridge. There was a conflict of evidence whether the whistle of train 57 was sounded for the obscure place or curve under Rainbow Bridge, appellant's witnesses testifying that the whistle was sounded at or about the customary whistling point immediately north of Rainbow Bridge, while respondent's witnesses testified that no whistle was sounded after passing the station post, a mile north of appellant's depot and 2480 feet north of Rainbow Bridge, until the emergency or warning whistle was sounded immediately before deceased Brown and engineer Kidd were struck by train 57. There was evidence of user of the railroad tracks and right-of-way by appellant's employees, and at least one witness testified that appellant's tracks had, for a period of two years before the casualty, "been used by a great many people" (not in the employ of appellant), "by numbers of people. I don't know where they live, but it is used by a great number of people." It is not disputed, and the proof conclusively shows, that all the trains referred to, and their

respective train crews, were engaged, at the time of the casualty, in interstate commerce.

Deceased, Harold Brown, was twenty-six years of age (lacking one day) when killed and had a life expectancy, according to the mortality table in evidence, of 38.11 years. His health was good and he was shown to be industrious. He had previously worked as a railroad switchman, a street railway supervisor, and an automobile salesman, and his average earnings in those several occupations had varied from $150 to $200 per month. He was survived by his widow, who was five months his junior in age, and by an infant daughter, who was born about thirteen months before her father's death. The jury returned a unanimous verdict for plaintiff and assessed the damages at $20,000, and from the resultant judgment defendant appeals.

I.  Appellant urges that the deceased, Harold Brown, was a mere licensee, and not its employee within the purview of the Federal

**Licensee.**  Employers' Liability Act, and, therefore, that the trial court should have directed a verdict for appellant upon that ground. The evidence shows that deceased was riding upon engine 3022 on the morning of the casualty as a student fireman, receiving no pecuniary pay for his services. Three days before his death, he received from one of appellant's officers the following order or permit:

> Trenton, Missouri, October 21, 1922.
> To all Engineers, Missouri Division.
>      This is your authority to allow bearer, Harold W. Brown, to ride engines on the Missouri Division, for purpose of qualifying as fireman.  Engineers please sign on back, stating his performance, date, engine number, train number, and to and from stations.
>                                        W. T. Fitzgerald.

The evidence further shows that the student fireman, on such trips, is subject to the orders and under the jurisdiction of the engineer and the fireman with whom he goes out, and that, on the interstate trip in question, deceased helped to fire the engine, ran the stoker, shoveled coal, and helped shake the grates and clean the cinders out of the pan, all under the orders of engineer Kidd and fireman Breitenbucher. His clothing was in the clothes-box of engineer Kidd and, accompanied by the engineer and regular fireman, he was on his way to the yard office and wash-room of appellant to wash and to change his clothing, according to the usual custom of train crews. The conductor of the freight train upon which deceased had been riding testified that, upon being caught by the 16-Hour Law when close to a terminal, it was customary for the train crew to walk in and register as a part of their work and duties, and that

he received pay for walking in from the train to the yard office on the morning in question.

In Baltimore & Ohio Railroad Company v. Burtch, 263 U. S. 540, one Burtch suffered injuries, as a result of the railroad company's negligence, in assisting to unload heavy freight in interstate transit, having been requested to assist in unloading the freight by the train conductor. In holding that Burtch was an employee within the terms of the Federal Employers' Liability Act, Mr. Justice SUTHER-LAND, speaking for that court, said: "There is a preliminary dispute as to whether Burtch stood in the relation of employee at the time of the injury, and this we first consider. The testimony shows that Burtch was not regularly employed, but that he engaged in this particular work at the request of the train conductor, because it was necessary to unload the cutter and the train crew was unable to do so without help. The evidence tends to show that the conductor, in making the request, followed a long-standing practice to call upon bystanders to assist in unloading heavy freight. These facts, either undisputed or established by the verdict of the jury under appropriate instructions, are ample to sustain the conclusion reached below that there was an exigency which authorized the conductor to employ outside assistance and that Burtch, for the time being, occupied the relation of employee to the company. See, for example, Marks v. Railway Co., 146 N. Y. 181; Fox v. Railway Co., 86 Iowa, 368; Haluptzok v. Railway Co., 55 Minn. 446; Maxson v. Case Threshing Machine Co., 81 Neb. 546; Aga v. Harbach, 127 Iowa, 144."

In Huntzicker v. Illinois Central Railroad Co., 129 Fed. 548, the Federal Circuit Court of Appeals, 6th Circuit, held that a student flagman, riding upon defendant's train under a written permit, directed to defendant's conductors, and killed while asleep in a caboose by reason of a rear-end collision, was an employee of defendant railroad company.

In Chesapeake & Ohio Railway Company v. Harmon's Administrator, 173 Ky. 1, it is said: "What the 'student' fireman is receiving and what the railroad company is receiving in return is valuable. While the 'student' fireman is upon the engine and performing the duties contemplated by the arrangement, and within the scope of his duties under the arrangement, the railroad company certainly owes to him the same duties it owes to the regularly employed fireman of an engine in his employment. [Rief v. G. N. Railway Co., 148 N. W. 309.] The law makes him an employee while engaged in the duties expected of him under the arrangement, and being accepted by appellant. It is the duty of the railroad company to furnish its servant with a reasonably safe place to perform the work required of him. He is, also, entitled to this duty from the master, while he has to be in places, which are incident to his work—that is, such

places at which he must necessarily be, in connection with his work. It has been held that the relation of master and servant, in so far as the duty to protect the employee is concerned, begins when the servant is necessarily on the premises of the master, in accordance with his contract of employment. [North Carolina Railroad Co. v. Zachary, 232 U. S. 248; Gray v. Railway Co., 153 Wis. 636; Fletcher v. Railroad Co., 168 U. S. 135; St. Louis Railroad Co. v. Seale, 229 U. S. 156.]''

To like effect are Rief v. Great Northern Railway Co., 126 Minn. 430; Smith v. Railroad Co., 134 Ga. 216; Findley v. Railway Co., 76 W. Va. 747; Millsaps v. Railway Co., 69 Miss. 423; and Weisser v. Railway Co., 148 Cal. 426.

As is said in Illinois Central Railroad Company v. Johnston, 205 Ala. 1, 87 So. l. c. 871: ''It has been decided by the Supreme Court of the United States that the test to determine the existence *vel non* of the relation of master and servant is whether the asserted employer 'retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done,' it being necessary carefully to distinguish 'between authoritative direction and control, and mere suggestion as to details.' [Railroad Co. v. Hanning, 15 Wall. 649; Singer Mfg. Co. v. Rahn, 132 U. S. 518; Chicago, etc., Company v. Bond, 240 U. S. 449; Standard Oil Co. v. Anderson, 212 U. S. 215; New Orleans, etc., Company v. U .ite ˉ States, 239 U. S. 202; Harrell v. Atlas Company, 250 Fed. 83; The Squire, 248 Fed. 469.]''

Applying the foregoing test to the facts in the instant case, there can be little, if any, doubt that appellant retained the right to direct the manner in which deceased Brown should do the work assigned to him by the engineer and fireman who accompanied him, for they (acting for appellant) not only told Brown what should be done, but apparently instructed him how it should be done; in other words, that was part of the instruction which Brown was to receive for the purpose of qualifying him as a regular fireman. If a third person had been injured through Brown's negligent performance of the duties assigned to him, there can be no question that appellant would have been liable for Brown's negligent acts, although he received no pecuniary compensation for the performance of those duties. [Haluptzok v. Railway Co., 55 Minn. 446, 57 N. W. 145.]

We have given thoughtful consideration to the cases cited by appellant in support of its contention that deceased was a mere licensee and not its employee, but the facts in those cases differentiate them from the case at bar. In Robinson v. Railroad Co., 237 U. S. 84, plaintiff was a porter employed by the Pullman Company, which supplied its own facilities and organized and controlled its own

service, including the service of its porters, whom it selected, defined their duties, fixed and paid their wages, directed and supervised the performance of their tasks, and placed and removed them at pleasure, without the interference or control of the railway company. In Wells Fargo & Company v. Taylor, 254 U. S. 175, Taylor was an express messenger in the employ of the plaintiff express company and subject to its control and direction. In Chicago, Rock Island & Pacific Railway Company v. Bond, Administrator, 240 U. S. 449, decedent was an independent contractor with the railroad company, and the court, in applying the test as to whether he was an employee of the railroad company, remarked: "The railroad company, therefore, did not retain the right to direct the manner in which the business should be done, as well as the results to be accomplished, or, in other words, did not retain control not only of what should be done but how it should be done. [Singer Mfg. Co. v. Rahn, 132 U. S. 518; Railroad Co. v. Hanning, 15 Wall. 649; Standard Oil Co. v. Anderson, 212 U. S. 215.] The case falls, therefore, under the ruling in Casement v. Brown, 148 U. S. 615." There is no doubt in our minds that deceased was an employee of appellant at the time of his death and that the action is properly brought under the Federal Employers' Liability Act.

II. Appellant assigns error in the failure of the trial court to direct a verdict for defendant on the ground that the sole proximate

**Deceased's Negligence: Proximate Cause.** cause of deceased's death was his own negligence. The identical point was raised by appellant and ruled against it in the Kidd case (310 Mo. 39, 274 S. W. l. c. 1091), but appellant insists that the evidence in this case differs from that in the Kidd case in that the evidence in this case shows that the area of steam escaping from engine 3002 extended a distance of only ten or twelve feet, north and south, while in the Kidd case there was no definite evidence as to the distance which the area of steam extended north and south. Arguing from the premise that the evidence in the instant case conclusively shows that the area of steam was only ten or twelve feet, north and south, appellant insists that train 57 was visible to deceased, had he looked toward the north before entering the steam, for a distance of 320 feet, affording him ample time to save himself from injury by stepping off the westerly track into a place of safety.

As the basis of the foregoing premise, appellant leans upon the deposition of the witness Gibson, offered by plaintiff, wherein Gibson testified: "Q. And this volume of steam in its distance north and south, it mentions north and south up and down the track, was about how long? A. Well, I should judge about ten feet—ten or twelve feet." The evidence, however, further tended to show that

315 Mo.—27.

engine 3002 is about ninety-one feet long from draw-bar to draw-bar, and that the distance from the gangway to the cylinder cocks is "somewhere in the neighborhood of sixty feet." Another witness, Griffin, testified that the steam from engine 3002 "must have stood half-way of the engine—half-way of the tender, somewhere in there," and that the steam "blocked the right-of-way; you could not see through the right-of-way on account of the steam and smoke." Fireman McDonald of train 57, who was on the inside of the curve and the only operative of train 57 who saw Brown and Kidd before the casualty, testified that he first saw them when within about 150 feet of the men and that he did not believe that a person on the westerly track could have been seen, when the train first came from under Rainbow Bridge, over about 150 or 160 feet; that "there was lots of steam; I guess it was coming from that engine," and, in his signed statement, he said: "There was a great volume of steam coming from engine 3002, which extended over the track ahead of us, which bothered me from seeing them very clearly." Plaintiff's witness Smith testified to certain experiments made by him as to the vision of a man standing on the most western track at a point twenty feet south of the gangway of engine 3002 with its pilot 215 feet south of Rainbow Bridge, without obstruction in the shape of smoke or steam, and that, with a freight train standing on the east track, he did not think the range of vision would extend over 100 feet north of Rainbow Bridge.

Assuming, as appellant does in its argument and brief, that deceased and Kidd were walking at a slow walk of two and one-half miles an hour, and that train 57 was traveling thirty to forty miles an hour, or not to exceed sixteen times as fast as deceased was walking, then train 57 would have traveled from 720 to 960 feet while deceased and Kidd were walking the sixty feet from the gangway to the pilot of engine 3002. It, therefore, seems apparent that train 57 was not within deceased's range of vision, and was at least 400 feet beyond his range of vision, when deceased started to walk south upon the westerly track at a point opposite the gangway or cab of engine 3002, as the record tends to show.

In Pennsylvania Railroad Company v. Crouse, 286 Fed. 376, that court said: "There is no rule of law which imperatively makes it negligence for a licensee walking along a railroad track to neglect to look back during a period of six or eight seconds if the track behind him was clear when he entered upon it."

There is no evidence in the record before us that deceased did not look northwardly before entering the volume of steam on the westerly track. Absent evidence to the contrary, the presumption will be indulged that he used due care for his own safety. [Hunt v. Railroad Co., 303 Mo. 107, 127; McDaniel v. Hines, 292 Mo. 401;

Burtch v. Railway Co., 236 S. W. 338.] For us to say, upon the record before us, that deceased was contributorily negligent as a matter of law, or, that deceased's own negligence was the sole proximate cause of his death, would be to substitute our own judgment for that of the duly constituted triers of the facts. Those were questions of fact for the jury (Hunt v. Railroad Co., 303 Mo. 127; Kidd v. Railway Co., 310 Mo. 1. c. 40, 274 S. W. 1092), and the assignment must be ruled against appellant.

III. Error is assigned in the admission of certain evidence. Plaintiff's witness Ellis, engineer of engine 3002, was being interrogated by counsel for plaintiff whether the steam escaping from that engine was hot enough to burn one passing in close proximity thereto. He was asked if his deposition had been taken and signed, whereupon his attention was directed to a certain question and answer upon a certain page of the deposition. Defendant's counsel objected to this method of examination as improper, on the ground that it sought to lay the foundation for impeachment of plaintiff's witness, whereupon plaintiff's counsel replied that the purpose was to refresh the memory of the witness. Defendant's counsel thereupon made the further objection that the witness's answer did not indicate that he needed any refreshing of his recollection upon that subject. In overruling the objections, the trial court stated: "The court would not permit him to lay a foundation for the purpose of impeaching his own witness, but the court will permit the witness to examine the deposition for the purpose of refreshing his recollection." While the record does not show that the question and answer in the deposition were read before the jury, appellant insists that the impression was nevertheless created that it was necessary to confront the witness with the deposition in order to have him tell the truth upon the witness stand. We do not know whether the question and answer in the deposition conflicted with, or contradicted, witness's testimony at the trial, for they are not incorporated in the record. So far as we can see, there was no effort made to substitute, and get before the jury, the previous testimony of the witness, for it does not appear that either counsel or the witness read the deposition, or any part of it, aloud to the jury. The refreshing of a witness's memory is a matter resting in the discretion of the trial court, whose rulings will not be disturbed in the absence of abuse of discretion. It is permissible, for the purpose of refreshing his memory, to direct the attention of a witness to statements previously made by him as to the subject-matter of his testimony, or to his testimony in respect thereto at a previous trial or hearing, for which purpose the previous testimony of the

**Refreshing Memory.**

witness may be read to him. [40 Cyc. 2449, 2450.] We cannot say that the trial court was guilty of an abuse of discretion herein.

Plaintiff's expert witness Burke was allowed to testify, over defendant's objections, that an engine in the condition of engine 3002, in his opinion, was not reasonably safe to be used, and

**Conclusion of Witness.** that it was not a reasonably proper method of handling an engine to allow a volume of steam to escape therefrom. Appellant urges that the issue before the jury was whether the use and condition of engine 3002 was unsafe for deceased and negligent as to him, and that the aforesaid testimony invaded the province of the jury and called for a conclusion of the witness. Similar testimony from an expert witness was inferentially, at least, ruled to be proper in Kilburn v. Railway Co., 289 Mo. 75, 1. c. 86, and, in Kidd v. Railway Co., 310 Mo. 1. c. 44, 274 S. W. 1093, we ruled that the error, if any, did not materially affect the merits of the action. We see no reversible error in the admission of the evidence complained of.

IV. Error is assigned in the giving of certain of plaintiff's instructions and in the refusal of certain instructions requested by defendant. The instructions, given and refused, in the

**Instructions.** instant case, are identical with those passed upon by us in the Kidd case and ruled to be free from reversible error.

It is claimed that plaintiff's Instruction 4 should have been refused because the evidence failed to show that a whistle sounded by the engineer of train 57 north of Rainbow Bridge could have been heard by deceased. Plaintiff's witness, Bert Ellis, testified, without objection, when asked what effect, if any, the noise made by the steam escaping from engine 3002 had upon the hearing of a whistle sounded in the cut north of Rainbow Bridge: "I should think from the amount of noise that was being made by the escaping steam at that present time that a man should be able to hear the sound of a whistle." Whether a whistle, if sounded a reasonable distance north of Rainbow Bridge, could have been heard by deceased above the sound of the blower of engine 3002 and the noise of the escaping steam was a proper question of fact for the jury under the evidence. [Rigley v. Pryor, 290 Mo. 10, 22.] In Unrein v. Oklahoma Hide Co., 295 Mo. 1. c. 375, we said: "It was one of the questions for the jury to decide, whether the noise made by the elevator in descending and by the truck in being pushed on to the elevator and the movement of the rope should reasonably have attracted the attention of the deceased to his perilous position, particularly if he thought he was on the elevator at the time." A similar instruction was approved by this court in Hubbard v. Wabash Railroad Co., 193 S. W. 579, 586.

It is claimed that this instruction is also erroneous in that it assumed that it was possible to have sounded the whistle while the engine of train 57 was approaching the curve and Rainbow Bridge within a reasonable hearing distance of deceased; in other words, that, inasmuch as the instruction authorized the jury to find that it was the duty of the engineer to sound the whistle in reasonable hearing distance and that he negligently failed to sound it within reasonable hearing distance, the instruction assumed, contrary to the evidence, that it was possible to have sounded a whistle north of the bridge which could have been heard by deceased. In our opinion, this criticism of the instruction is not well grounded, for the instruction further required the jury to find and believe from the evidence "that said passenger train did not sound any locomotive whistle while in said cut north of said Rainbow Bridge; and, that the locomotive whistle could have been heard by the said Harold Brown if it had been sounded in said cut and while approaching said curve and Rainbow Bridge." The instruction was apparently patterned after a similar instruction approved by us in Hubbard v. Wabash Railroad Co., 193 S. W. 1. c. 586. But had the instruction not been hypothesized upon the ability of the deceased to hear the whistle if sounded, which hypothesis is embodied in plaintiff's instruction herein, it would seem that the instruction would have been proper under our ruling in Preston v. Railroad Co., 292 Mo. 442, 455, whereat we said: "It is further contended that the jury should have been required to find, before verdict for respondent, that respondent could have heard a warning had one been given. The instruction did require the jury to find the duty to warn, the opportunity to warn, the failure to warn, and then that this was negligent and that respondent's injury was a direct result of such negligence, before finding for respondent. This covered the issue whether respondent could have heard, had a warning been given."

It is insisted that the trial court erred in giving plaintiff's instructions numbered 3 and 4, which authorized the jury to find from the evidence that the crew of train 57 owed a duty to anticipate the presence of deceased walking upon the track, and in refusing to give defendant's instructions numbered 4 and 9 withdrawing that issue from the jury. While the giving of similar instructions for plaintiff, and the refusal of contrary instructions requested by defendant, was approved by us in the Kidd case, supra, appellant contends that the evidence in the case at bar differs from that in the Kidd case in that there is no evidence of user of the railroad tracks by the public in the instant case, and that the only evidence of user by appellant's employees was under such unusual circumstance as the blocking of a train within the corporate limits of the city by the operation of the 16-Hour Law. Appellant, however, apparently overlooks the testi-

mony of witness Bert Ellis, the fair inference from which is that the tracks and right-of-way were used for a period of two years before the casualty by "a great many people, used by a great number of people" not employees of appellant. While it is true that there was much cumulative evidence of public user of the railroad tracks in the Kidd case, yet we cannot say that the record in the instant case is devoid of any evidence of user of the tracks by the public. There is ample evidence in the record of user of the tracks and right-of-way by appellant's employees. The engineer of train 57 did not have the right to expect a clear track at the place of the casualty and was not relieved of the duty to anticipate the presence of deceased upon the westerly railroad track. [Greenwell v. Railway Co., 224 S. W. 404; Hunt v. Railroad Co., 303 Mo. 107; Hubbard v. Railroad Co., 193 S. W. 579; Dixon v. Railroad Co., 109 Mo. 413; Rigley v. Pryor, 290 Mo. 10; Kidd v. Railway Co., supra.]

It is also claimed that error was committed in the giving of plaintiff's Instruction 15 on the measure of damages, which was predicated upon a finding by the jury that deceased was not guilty of contributory negligence as defined in other instructions, and in the refusal of defendant's Instruction 11, in the form it was requested, which would have told the jury, in effect, that deceased was negligent as a matter of law. We have herein ruled that deceased was not contributorily negligent as a matter of law. Whether he was guilty of contributory negligence, or negligence which was the sole proximate cause of his death, were proper questions for the jury. [Hunt v. Railroad Co., 303 Mo. l. c. 127.] The same criticism was directed to an identical instruction given in the Kidd case and that instruction was held to be proper, when read in connection with other given instructions on the measure of damages. [Kidd v. Railway Co., 310 Mo. l. c. 43.] The same ruling applies to the criticism in this case, for the plaintiff's given instructions on the measure of damages and defining contributory negligence are the same as those given in the Kidd case. The record discloses no reversible error in the giving or refusal of instructions.

V. It is finally contended by appellant that the verdict for $20,000 herein is excessive. The deceased was twenty-six years of age (lacking one day) at his death and had a life expectancy of 38.11 years. His wife was five months his junior, so that her life expectancy is approximately the same as that of deceased. He was survived by one child, a daughter, whose age was about thirteen months at his death. He was in good health and industrious. He had previously been employed at various vocations, but the record tends to show that he was employed in each of the several vocations for short periods of from six months to a year. There is

Excessive
Verdict.

evidence that his earnings in those vocations had varied from $150 to $200 per month. He apparently received no pecuniary pay while working as a student fireman, and there is no evidence from which we may infer with reasonable certainty that he would have subsequently qualified and entered appellant's employment as a regular fireman. Neither is there evidence of the average earnings of a regular fireman.

Respondent justifies the amount of the verdict by reason of our findings in Gill v. Railroad Co., 302 Mo. 317; Lorton v. Railroad Co., 306 Mo. 125, 267 S. W. 385; and Kidd v. Railway Co., 310 Mo. 1. In the Gill case, deceased was a switch foreman, and we may reasonably presume that he had been promoted to that position after a previous term of training and experience in a minor capacity; he was also two years younger than Harold Brown and had a longer life expectancy, although his widow had a shorter life expectancy than plaintiff herein, and Gill left no surviving child. In the Lor-- case, deceased was survived by a wife twenty-six years of age, and two infant daughters. In the Kidd case, deceased was a locomotive engineer in the railroad service for thirteen years and was survived by a wife and four minor sons, but we deemed a verdict of $30,000 excessive and required a *remittitur* of $5,000, reducing the judgment to $25,000. In Burtch v. Railway Co., 236 S. W. 338, an action for the death of a switchman who left a wife and infant daughter surviving, this court, en Banc, held a verdict for $15,000 to be excessive to the extent of $3,000.

However, as we said in the last cited case, "each case under the Federal Employers' Liability Act must depend largely upon the facts presented at the trial in fixing the pecuniary loss sustained." Neither the jury nor ourselves should engage in unwarranted speculation, not supported by the evidence, respecting the pecuniary loss reasonably sustained by the surviving wife and children of a deceased railroad employee. We are convinced from the evidence herein that the verdict is excessive to the extent of $2,500. If, therefore, the plaintiff and respondent will file with the clerk of this court and enter herein a voluntary *remittitur* of $2,500 within ten days from the filing of this opinion, the judgment will be affirmed for $17,500 as of the date of its original rendition in the circuit court on May 12, 1923; otherwise, the judgment *nisi* will be reversed and the cause remanded for a retrial. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.