## WATKINS v. THOMPSON.
### No. 5083.

District Court, E. D. Missouri, E. D.
July 14, 1947.

954

Mark D. Eagleton, of St. Louis, Mo., for plaintiff.

Cooper Turner, Jr., of Memphis, Tenn., and C. H. Skinker, Jr., of St. Louis, Mo., for defendant.

HULEN, District Judge.

Motion of defendant for judgment notwithstanding verdict and in the alternative for new trial, following judgment for plaintiff for $10,000 under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., is now before the Court.

Plaintiff desired employment as a switchman. Physical disability prevented his qualifying. He then made application for yard clerk work. He signed a "student" contract, "in order to properly qualify himself for the duties of such position". The contract required plaintiff to serve as a

student without compensation for such time as defendant directed. Defendant's chief yard clerk introduced plaintiff to Mr. Donovan, a yard clerk, with instructions to follow Donovan's orders. Part of plaintiff's instructions consisted of performance of services for defendant. One of the duties of yard clerk was to check car numbers and seals on cars received and departing. There was a seal on the car door on each side of the car. Plaintiff and the yard clerk went into defendant's yards and under the yard clerk's direction checked the seals on a train of cars. Plaintiff checked the seals on one side of the cars while the yard clerk performed the same work on the other side, thus relieving the yard clerk of work on one side of the cars. Finishing this work the two went to a small house to get warm. They then started to another train of cars to make a check. It was necessary to go around or pass through a train of cars on an intervening track. The yard clerk passed between two cars. Up to this point there is no dispute in the testimony. One issue in the case was what the yard clerk's instructions to plaintiff were about going through the train of cars. In conformity with plaintiff's version of his instruction from the yard clerk he attempted to pass between two of the cars and in doing so he stepped on the coupling, at which time the train was moved, causing his foot to be caught in the coupling resulting in injury, the basis of recovery.

Defendant contends there was no evidence from which the jury could find plaintiff was an employee of the defendant at the time of his injury. Defendant would support its claim by a ruling of the United States Supreme Court. We consider this to call for a discussion of the point with some detail.

### I.

The Federal Employers' Liability Act, 45 U.S.C.A. § 51, 53 Stat. 1404, provides: "Every common carrier by railroad while engaging in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * in whole or in part from the negligence of any of the * * * employees of such carrier * * *."

The rights which the Act creates are federal rights, and the federal decisions which have construed this Act must be accepted as controlling. The federal rules have been largely fashioned from the common law except as Congress has written them into the Act. Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444.

An action under this section must be based on the relation of "employer" and "employee" between the railroad and the person injured at the time of injury. The Act defines neither term. As a result of such failure the courts have experienced no hesitation in stating the rules by which the relationship shall be determined. In Stevenson v. Lake Terminal R. Co., 6 Cir., 1930, 42 F.2d 357, loc. cit. 358, the court declared: "The Congressional failure to define the term 'employee' in either the Safety Appliance Acts, 45 U.S.C.A. § 1 et seq. or the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, has evoked a large amount of litigation. See 45 U.S.C.A. § 51 * * *. And the Supreme Court has held that the term 'employee' in the Employers' Liability Act describes the conventional relation of master and servant. Robinson v. Baltimore & Ohio R. Co., 237 U.S. 84, 35 S.Ct 491, 59 L.Ed. 849; Hull v Philadelphia & R. R. Co., 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670 * *. This relation is usually dependent upon *the right to direct the manner in which the work should be done* (Chicago, R. I. & P. R. Co. v. Bond, supra, at page 456 of 240 U.S., 36 S.Ct. 403 [60 L.Ed. 735]) or, stated differently, its existence is determined by ascertaining *whose work was being performed at the time of the injury.* Linstead v. Chesapeake & Ohio R. Co., 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453. * * *" (Emphasis added.)

On the basis of the ruling of the Supreme Court in Robinson v. Baltimore & Ohio R. Co., 237 U.S. 84, 35 S.Ct. 491, 59 L. Ed. 849, that the word "employee" in the Act is used in its natural sense and is intended to describe the conventional relation of employer and employee, we find

the federal cases announcing the test for such a relationship to be in harmony with the prevailing authority in many states. For illustration see The F. B. Squire, 2 Cir., 248 F. 469, 471, where the court, in considering the test to be applied in determining employer and employee relationship, said that inquiry must be made "whose is the work being performed" and that careful distinction must be made "between authoritative direction and control and mere suggestion as to details or necessary cooperation, where the work furnished is part of a larger undertaking." To the same effect is a ruling of the Eighth Circuit. In Harrell v. Atlas Portland Cement Co., 8 Cir., 250 F. 83, 85, the issue was whether plaintiff was an employee of a railroad or a cement company. The test applied was "Did the railway company or the cement company have the exclusive power to direct and control his action in doing the work he was performing at the time of his injury?" Applying this norm the opinion concludes: "that in the conduct of the work the plaintiff was performing, at the time of his injury, the cement company had and was exercising the exclusive power to control and direct how, when, and where he should do his work, that he was its servant and a fellow servant of the engineer and the members of the latter's crew."

The case of Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 255, 53 L.Ed. 480, is a leading authority on this subject. In that case the Court said: "The master is the person in whose business he [the workman] is engaged at the time, and who has the right to control and direct his conduct."

In the Anderson case the Court observes that many of the cases discuss the power of substitution or discharge, the payment of wages, and other circumstances bearing upon the relationship, but rules "* * * they, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and whose is the power of control."

## II.

Several federal railroad decisions have recognized the rule announced in the authorities cited, and found that a servant or employee relationship results where a workman enters on a course of instruction with a railroad, without compensation, and performs services as part of his instructions. In Huntzicker v. Illinois Cent. R. Co., 6 Cir., 1904, 129 F. 548, 549, plaintiff's intestate desired employment in the service of defendant, and it was agreed that he should go upon the road and learn by observation the work of a flagman.

"He observed and inquired about the methods of the business, and was instructed therein, and participated in the performance of the duties of flagman under the direction and control of the conductor of the train. * * *

"Applying the controlling principles which we have indicated to the present case, it seems clear that Fereday at the time of his death was a servant of the defendant."

In McMillan v. Grand Trunk R. Co. of Canada, 1 Cir., 1904, 130 F. 827, plaintiff's intestate had gone to defendant's yard with an experienced servant for the purpose of receiving instructions as to manner of coupling cars and was killed while between cars attempting to make a coupling. In this case the court said, "It is not questioned that the deceased stood as a servant", citing the Huntzicker case.

We find no other federal decisions where the facts are similar to the present case. Decisions of state courts, where based on the same test as announced by the federal courts, we consider at least persuasive.

The Supreme Court of Missouri in 1926, in Brown v. Chicago, R. I. & P. R. Co., 315 Mo. 409, 286 S.W. 45, 49, a case under the Employers' Liability Act, was faced with the question now before this Court. Citing the Huntzicker decision as well as many of the cases to which we shall direct attention (before and after passage of the Act) and commenting on the test announced in those cases for determining the employment relationship, the court said: "Applying the foregoing test to the facts in the instant case, there can be little, if any, doubt that appellant retained the right to direct the manner in which deceased Brown should do the work assigned to him by the engineer and fireman who accompanied him, for they

(acting for appellant) not only told Brown what should be done, but apparently instructed him how it should be done; in other words, that was part of the instruction which Brown was to receive for the purpose of qualifying him as a regular fireman. If a third person had been injured through Brown's negligent performance of the duties assigned to him, there can be no question that appellant would have been liable for Brown's negligent acts, although he received no pecuniary compensation for the performance of those duties. Haluptzok v. Railway Co., 55 Minn. 446, 57 N.W. 145, 26 L.R.A. 739."

In Millsaps v. Louisville, N. O. & T. Ry. Co., 1891, 69 Miss. 423, 13 So. 696, it was held that one working as fireman on a locomotive with the permission of the railroad company for the purpose of learning the business, was a fellow servant of the train dispatcher employed by such company.

The Supreme Court of California, in Weisser v. Southern Pac. Ry. Co., 1906, 148 Cal. 426, 83 P. 439, held that a student brakeman on freight trains of defendant at his own request and by permission of the defendant for the purpose of gaining experience to render him competent to act as a regular brakeman, and who was entirely subject to defendant's orders and was required to perform such ordinary duties of brakeman as were alloted to him, was a fellow servant of other trainmen although he received no compensation. And on a similar state of facts the Supreme Court of Kansas, in Atchison, T. & S. F. R. Co. v. Fronk, 1906, 74 Kan. 519, 87 P. 698, 11 Ann. Cas. 174, held a student brakeman to be an employee of the railroad. These cases were all decided before passage of the Federal Employers' Liability Act.* Did they lose their force as authorities on the employment relationship of student workmen on railroads by passage of the Act?

In 1915 the Supreme Court of Appeals of West Virginia, in Findley v. Coal & Coke Ry. Co., 76 W.Va. 747, 87 S.E. 198, 202, held a student-fireman to be an employee. In support of its holding the court said: "The designation of his rank, as a student fireman, does not imply lack of active duty for the company or service merely for himself as a student. *The terms clearly imply practice in the form of service to his employer, as well as study by observation.*" (Emphasis added.)

The case of Rief v. Great Northern Ry. Co., 1914, 126 Minn. 430, 148 N.W. 309, has been frequently cited in support of the employee relationship of student railroad workmen and we find no case in which the law there announced has been criticized. In the Rief case, under the Federal Employers' Liability Act, there was a contract, in one respect similar to the contract in the present case. Neither contract indicated plaintiff as a student-workman was to render any services whatever for defendant In the Rief case, like the case at bar, the testimony showed that he was expected to perform and did perform, as part of his training, such tasks as were assigned to him by employees of defendant. In holding the student brakeman was an employee and not a licensee, the court cites the Weisser, Huntzicker and Fronk cases.

In 1916 the Court of Appeals of Kentucky, in Chesapeake & O. R. Co. v. Harmon's Adm'r, 173 Ky. 1, 189 S.W. 1135, Ann.Cas.1918B, 41, on facts similar to those in the Rief case, held a student fireman "who received no wages or other return, except information, for his services, performed by virtue of a permit authorizing him to ride on the engine only of defendant's trains at his pleasure" was an employee and entitled to a reasonably safe place to work in places where he must necessarily be while performing the duties contemplated by the arrangement, as the term employee is used in the Federal Employers' Liability Act.

We repeat—the tests applied by the Supreme Court of Missouri in the Brown case and in the cases cited are those used to determine "the conventional relation of employer and employee". See Robinson v. Baltimore & Ohio R. Co., supra. And when the court speaks of the railroad retaining the right to direct the manner in which a student workman should do the

---

* Except the case of Brown v. Chicago, R. I. & P. R. Co.

work assigned to him—what should be done—how it should be done—as part of the instruction the student was to receive for the purpose of qualifying for the position sought, these tests when applied to the facts in the case before us bring the same result. Or if a third person had been injured through plaintiff's performance of work assigned to him by defendant's yard clerk, there can be no question, defendant would be liable for plaintiff's negligent acts even though he received no pecuniary compensation from defendant. The court held in the Brown case: "There is no doubt in our mind that deceased was an employee of appellant at the time of his death, and that the action was properly brought under the federal Employers' Liability Act."

### III.

█ Defendant's position is that these authorities on the employment relationship of students are overruled by the decision of the Supreme Court in Walling, Administrator v. Portland Terminal Co., 1947, 67 S.Ct. 639. The issue in the Walling case was whether student brakemen were employees within the meaning of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The Supreme Court held they were not. There is language in the opinion which standing alone would seem to cast doubt that the cases cited are still authority on whether student employees come within the provisions of the Federal Employers' Liability Act, but when we consider the issue in the Walling case we conclude it has no application to the case now before this Court. When the Walling case was before the Court of Appeals (1 Cir., 155 F.2d 215, loc. cit. 218) that court quoted with approval the following excerpt from the case of Bowman v. Pace, 5 Cir., 119 F.2d 858, 860: "It is not the purpose of the Fair Labor Standards Act to create new wage liabilities, but where a wage liability exists, to measure it by the standards fixed by law. If one has not hired another expressly, nor suffered or permitted him to work *under circumstances where an obligation to pay him will be implied,* they are not employer and employee under the Act." (Emphasis added.)

Following the same line of reasoning, indicative of the rule that must be applied in determining the employment relationship under the Fair Labor Standards Act, the Supreme Court said in the Walling case, [67 S.Ct. 641]: "The Act's purpose as to wages was to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage."

The test to determine the employment relationship under the Fair Labor Standards Act is different from that determining the same relationship under the Federal Employers' Liability Act and the Supreme Court in the Walling case so held: "But in determining who are 'employees' under the Act, common law employee categories or employer-employee classifications under other statutes are not of controlling significance."

In the Walling case the Court illustrates the basis of its ruling by assuming: "Had these trainees taken courses in railroading in a public or private vocational school, wholly disassociated from the railroad, it could not reasonably be suggested that they were employees of the school within the meaning of the Act. Nor could they, in that situation, have been considered as employees of the railroad merely because the school's graduates would constitute a labor pool from which the railroad could later draw its employees. The Fair Labor Standards Act was not intended to penalize railroads for providing, free of charge, the same kind of instruction at a place and in a manner which would most greatly benefit the trainees."

The "penalty" referred to was the payment of the minimum wage under the Fair Labor Standards Act. When we apply the illustration used in the Walling case to a case under the Federal Employers' Liability Act we get an entirely different result. No penalty is imposed under the Federal Employers' Liability Act. While on the railroad property trainee is under the orders and directions of the railroad not only as to work that shall be done but how the work shall be done. The work done is work of the railroad. The

work plaintiff was doing was "directly and immediately" connected with interstate transportation of commerce. See St. Louis, S. F. & T. R. Co. v. Seale, 229 U.S. 156, loc. cit. 159, 160, 33 S.Ct. 651, 57 L.Ed. 1129, Ann.Cas.1914C, 156. The employer owes a duty to the trainee in performing services directed by the employer, to furnish the trainee a reasonably safe place to work or carry on the occupational part of his training. Compensation is the sole question under the Fair Labor Standards Act. In the Walling case the Court said, if the trainees "are employed to work for an employer for compensation" they would be covered by the Act. That the Walling case should not receive the interpretation urged by the defendant also follows from the fact none of the authorities which hold student or trainee railroad workmen to be employees under the Federal Employers' Liability Act are referred to either in the opinion of the Court of Appeals or the Supreme Court. No reference is made to the ruling of the Supreme Court in Robinson v. B. & O. R. Co., supra, that under the Employers' Liability Act the words "employer" and "employee" are used to describe the conventional relationship of employer and employee. Or the opinion in Standard Oil Co. v. Anderson, supra, that payment of wages is not the ultimate fact in determining whether an employee relationship exists. For these reasons we do not consider the opinion of the Supreme Court of the United States in the Walling case controlling in this case. It is our conclusion the weight of authority supports the finding of the jury, on the record, that plaintiff was an employee of defendant at the time of injury under the provisions of the Federal Employers' Liability Act. The case of Bourne v. Southern Ry. Co., 225 N.C. 43, 33 S.E.2d 239, cited by defendant, we do not consider in point on the present issue.

## IV.

■ The instructions are the subject of complaint by defendant. First: For refusal to give defendant's request "A". This instruction does not follow the law. It apparently is based on Walling v. Portland Terminal Co., supra. It omits entirely the test of "control", "right to control", manner in which work shall be performed, and "whose work was being performed", and substitutes therefor the tests of (1) learning duties, (2) compensation, (3) displacement of a regular employee, and (4) benefits derived by the employer.

■ Second: That the charge failed to sufficiently specify the method which the jury should follow in determining the relationship of plaintiff and defendant. We have read the charge and find no basis for defendant's claim. The jury, to render a verdict for plaintiff, being required to find plaintiff was "subject to the orders * * * control of defendant * * * that defendant ordered plaintiff to perform * * * duties assigned to him * * * plaintiff acting within * * * scope of his employment * * * was required * * * to perform and did perform duties in * * * furtherance of defendant's interstate business * * * and * * * while * * * so doing" was injured, did determine the facts necessary to constitute plaintiff an employee under the Act.

Third: That duties in furtherance of interstate transportation business was the sole test, submitted to the jury as a basis for the employer relationship. A reading of the charge will show this assignment to be without merit.

There is doubt as to points two and three being the subject of objection before retirement of the jury but we have considered them on the assumption that exceptions taken at that time are ample to advise the Court of defendant's position.

■■ Defendant attacks the verdict as being excessive. Plaintiff lost one toe and part of a second. There were two other possible fractures of the foot. The injury happened in December, 1945, and at the time of trial (June, 1947) plaintiff was still suffering pain ascribed to impingment of nerves. There was evidence plaintiff had a substantial loss of time, not to exceed $1,000, had been forced to give up work requiring his standing on his feet, and that his injury was permanent. We believe the verdict did not fall short of compensating plaintiff fairly and reasonably for his injuries. Had the case been tried without a jury and before this Judge, the compensa-

tion might and probably would have been less. But is that the test of an excessive verdict? The answer is no unless the verdict is so grossly excessive as to shock the conscience of the Court, or it is clearly manifest that it was the result of mistake, caprice, passion, prejudice, or other improper motive. This has not been suggested by defendant. Compensation for personal injury cannot be determined with certainty. Honest and conscientious jurors can differ with a judge on the subject and there is no way of determining who is right in his opinion. We will not presume to say that 12 jurors are less capable of reaching a fair decision than a judge. They are citizens from different walks of life, with varied experience, and may be better qualified to pass on the issue than a judge. Aside from the pain, injury and loss of time, the jury might well consider plaintiff had no special training, his field of opportunity for work was limited and as he grows older the limitation will increase. There was testimony that he had tried and was unable to hold positions requiring him to stand on his feet for long periods. Whether that condition will improve is a question that only time can answer. If it does not his work field will be further circumscribed. How much this circumstance figured in the jury verdict we do not know. Generally courts are reluctant to disturb jury verdicts on the ground either of excess or inadequacy where there is no fixed measure of damages. We are not convinced the record in this case calls for such action.

## Order

Motion of defendant to set aside the verdict of the jury and judgment for plaintiff based thereon and to enter judgment for defendant in accordance with defendant's motion for a directed verdict filed at close of all the evidence, is overruled, and defendant's motion for new trial is overruled.