STATE of Missouri, Respondent,

v.

Herbert Ned TATE, Appellant.

No. 55876.

Supreme Court of Missouri, Division No. 1.

June 28, 1971.

John C. Danforth, Atty. Gen., J. Michael Jarrard, Asst. Atty. Gen., Jefferson City, for respondent.

Harold F. Fullwood, Francis P. Dorsey, St. Louis, for appellant.

HOUSER, Commissioner.

This a direct appeal by Herbert Ned Tate from a judgment of conviction and sentence of life imprisonment on a charge of murder in the first degree.

Tate and four others were jointly indicted for the murder of Mike LoGrasso in his restaurant during the course of a holdup.

State's witness Claude Johnson testified that four men, Berry, Brantner, McKinney and Fair, three of whom were armed, en-

**648**

tered the restaurant and that one Wright and Herbert Tate were outside. Cross-examination of Johnson was waived, whereupon the following occurred:

"THE COURT: That's Fair, Brantner, and McKinney, and Wright were the four who came in? Is that what you told us?

THE WITNESS: Yes, sir. And Berry.

THE COURT: And Berry. Berry was one of the four. Who were the two who stayed outside?

MR. DORSEY [counsel for appellant]: Your Honor, we object to this.

MR. FULLWOOD [co-counsel for appellant]: Object to this repetition from the bench.

MR. DORSEY: We want to make a record on that.

MR. FULLWOOD: We want to make a record on that."

Out of the hearing of the jury counsel for appellant objected to the court "taking an active part in the prosecution of this case" and "giving the jury the implication that this boy was involved in something," and asked the court to instruct the jury to disregard the court's remark and that a mistrial be declared. The court then in the presence of the jury instructed the jury to disregard his use of the phrase "remained outside." Appellant's counsel again objected on the ground that the last comment "just added fuel to the fire," was a comment on the evidence, and requested the court to instruct the jury to disregard all remarks made by the court and that a mistrial be declared. These requests were overruled.

■ Appellant's first point on appeal is that the foregoing could reasonably be construed by the jury to indicate that the trial judge believed defendant accompanied the others to the restaurant as an accomplice, which was contrary to appellant's defense. Appellant quotes § 546.380, RSMo

1969, V.A.M.S., which prohibits the court from commenting on the evidence, and cites and quotes from State v. Jones, Mo. Sup., 197 S.W. 156, and State v. Castino, Mo.Sup., 264 S.W.2d 372, 375, on the duty of a trial judge to avoid any indication of feeling against the accused in criminal trials; to be absolutely impartial both in his conduct and remarks, and not say anything that can be construed by the jury to prejudice the defendant. We reaffirm the solemn obligation of trial judges in these respects, but this record does not demonstrate feeling or partiality on the part of the judge or prejudice to appellant's rights. It is obvious that the judge was attempting to clarify the witness' testimony as to who was inside and who was outside the restaurant at the time of the shooting. The court has the right and duty to propound additional questions to clarify testimony and absent an abuse of discretion operating to deny the accused a fair trial prejudicial error is not demonstrated. State v. Grant, Mo.Sup., 394 S.W.2d 285; State v. Lay, Mo.Sup., 427 S.W.2d 394, 403. The trial judge's use of the phrase "stayed outside" was clearly an inadvertent misquotation of the witness' testimony, which was corrected and rendered harmless by his instruction to disregard. The discrepancy between "remained" outside and "stayed" outside is not a matter of such consequence as to amount to prejudicial error.

■ Appellant's second point is that the court erred in allowing the State to impeach its witness, Mary Jones, without first showing that she was hostile and without laying a foundation by showing entrapment or surprise.

Appellant's defense was that although he was with the other men while the crime was being planned he remonstrated with them, and tried to dissuade them; that although he went to the restaurant with the others he tried to keep Berry from entering the restaurant; that he did not see any of his associates in possession of guns;

that he was not disguised (as were the four who entered the restaurant) and was not armed; that he stayed outside, and that when he heard the shot he ran home and stayed there.

Mary Jones, in whose home the crime was planned, testified for the State, naming defendant Herbert Tate as one of the men who was at her house, with Berry, McKinney, Fair, and Wright, while the robbery was being planned. When asked to name the persons who came back to her house after the commission of the crime she named Berry, McKinney, Fair and Wright but failed to mention Herbert Tate as one of the men who returned to her house. The State's attorney asked permission to cross-examine the witness as to a prior inconsistent statement to the extent of asking her whether she made a prior statement in writing that Tate was present with the others at her house after the holdup and that Tate had said that Berry didn't have to shoot the man. Objections that no foundation had been laid for the inquiry and that this was an improper way to impeach a witness were overruled, and the following exchange took place:

"Q [by the State's attorney]: Do you recall last June telling me that one of those present at the time of this meeting following the holdup was Berry, Fair, and McKinney, and so on, that one of the men present was Herbert Ned Tate?

A Yes.

Q All right. And is that in fact the truth?

A Yes."

Appellant takes the position that this constituted impeachment of the witness and, citing cases,[1] seeks to invoke the rule

that a party cannot impeach his own witness by proof of the witness' prior inconsistent statements merely because the witness fails to testify to the facts as expected; that the witness must go further and testify in favor of the opposite party, producing a situation amounting to an entrapment before he becomes adverse so as to warrant his impeachment by the party producing him.

That rule is inapplicable in the situation revealed by this record. Mary Jones was a willing witness. She testified in behalf of the State, freely and openly. She demonstrated no hostility, adverseness, or evasiveness. She did not indicate any disposition to suppress the truth. There was no necessity of impeachment. Obviously she merely forgot that Tate was among those present at the time in question. Patently this was not a situation in which it was necessary to formally impeach the witness by confronting her with an inconsistent extrajudicial statement, but rather was a situation which called for the refreshing of the witness' memory. As soon as the June conference with the assistant circuit attorney was recalled her memory was refreshed as to the statement she had made at that time about Tate; she readily remembered the fact and confirmed her prior statement as the truth. There was no effort to introduce the typed statement in evidence; it was not offered or received. So the rule relied upon is not applicable. Instead, the rules with respect to the refreshing of the memory of a party's witnesses come into play. "The refreshing of a witness' memory is a matter resting in the discretion of the trial court, whose rulings will not be disturbed in the absence of abuse of discretion." Brown v. Chicago, R. I. & P. Ry. Co., 315 Mo. 409, 286 S.W. 45, 50. State v. Patton, 255 Mo. 245, 164 S.W. 223, held that a witness, being fair and truthful and desirous of stating the facts as they were, but whose

1. State v. Hogan, 352 Mo. 379, 177 S.W.2d 465; State v. Adams, 355 Mo. 1186, 200 S.W.2d 75; State v. Walker, 357 Mo. 394, 208 S.W.2d 233, 237, and State v. Drummins, 274 Mo. 632, 204 S.W. 271.

memory is hazy from lapse of time, may have his present recollection refreshed by reference to and use of data made in his presence or dictated by him. This rule has been employed frequently, as late as State v. Renfro, Mo.Sup., 408 S.W.2d 57, 59. The State's attorney had the typewritten record of his interview with Mary Jones in hand, and although the record does not show that he exhibited it to her, it is obvious that he used it in framing the questions calculated to refresh the witness' present recollection. We find no abuse of discretion in the action of the court. Brown v. Chicago, R. I. & P. Ry. Co., supra; State v. Gregory, 339 Mo. 133, 96 S. W.2d 47, 55 [10]; Woelfle v. Connecticut Mut. Life Ins. Co., 234 Mo.App. 135, 112 S.W.2d 865, 874 [15].

 Finally, appellant complains of certain remarks made by the State's attorney in his argument to the jury. The State's attorney, being of the opinion that the reason Mike LoGrasso was shot was that he could produce no more money, argued that from the evidence that the cash register was emptied; that LoGrasso's wallet was taken from him; that more money was demanded; that when he could produce no more money one of the robbers said, "Shoot him, Walter," whereupon LoGrasso was shot and killed, the jury could draw the conclusion that the reason the robbers shot him was that he could not produce more money. He also pointed out the possibility that the jury could arrive at any other conclusion, adding "Perhaps they're just mean punks." Appellant's counsel objected "to this type of argument" as beyond the scope of the evidence, inflammatory and prejudicial, and asked for a mistrial. The court overruled the objection and the request for a mistrial. We find no fault with this "type" of argument (that the killing was vengeful, based upon a senseless reason, or simply because the robbers were evil young tramps). "Mean punks" is strong language but in the face of evidence of a brutal, insensate, vindic-

tive killing the remark may be considered as a reasonable deduction and a legitimate comment on the evidence, even as the State's attorney's reference in State v. Ayers, Mo.Sup., 305 S.W.2d 484, to defendant and his companion as "desperados" and "hoodlums" was considered a justifiable inference and not an epithet hurled at defendant. The same may be said of the reference to appellant as "a vicious man." In State v. Topalovacki, Mo.Sup., 213 S.W. 104, the court was not prepared to say that the prosecutor's reference to the defendant as a "scoundrel," although deemed violent language, was not justified by the circumstances (rape of a little girl).

 Exception is taken to the following: "You know the evidence, and you can draw whatever conclusions are necessary from the vicious, mad-dog acts of these men that were there; and if it isn't because there was no more money, then there is perhaps no human motive that can be attributed to the men who committed this * * *." This was objected to as the personal opinion, the personal comment of the circuit attorney, and a reprimand and a mistrial were requested. The court denied both, but admonished the State's attorney as follows: "I understand, Mr. Darst, any opinions that you state must be based upon the evidence, and not your personal opinions." The "mad-dog" argument was improper and the court would have been acting properly to sustain the objection, reprimand counsel, strike it from the record and instruct the jury to disregard it. The court's admonishment, however, was in effect a sustaining of the objection and constituted a mild rebuke. Whether counsel's improper remarks on argument call for reprimand or discharge of the jury is a matter resting largely within the trial court's discretion, State v. Whipkey, 361 Mo. 1008, 238 S.W.2d 374, and the appellate court will not interfere unless the record shows an abuse of discretion to the prejudice of the appellant. State v. Madden, Mo.Sup., 394 S.W.2d 317. "The court

was in a far better position than we are to determine the remedial measures required, and we cannot say, as a matter of law, that in the circumstances we have here it erred in refusing to take the drastic step of declaring a mistrial and discharging the jury." State v. Nolan, Mo.Sup., 423 S.W. 2d 815, 819.

Later the State's attorney argued: "Mike LoGrasso is dead and none of us have to be there or have been there [sic] to be able to testify about it because the odds are that if we had been there we'd be as dead as Mike LoGrasso." This was objected to as highly prejudicial and the court was requested to instruct the jury to disregard it and to declare a mistrial. The court instructed the jury to disregard it, thereby inferentially sustaining the objection, but overruled the motion for a mistrial. Assuming that the remark was improper, it is not ground for a reversal of the judgment, in view of the action of the court. State v. Smith, 250 Mo. 350, 157 S. W. 319, 324–325 [8]. A mistrial should be granted only "where the incident is so grievous that the prejudicial effect can be removed no other way." State v. Nolan, supra, 423 S.W.2d, 1.c. 818. We find no abuse of discretion in the denial of a mistrial.

No reversible error appearing, the judgment of conviction is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as opinion of the court.

All of the Judges concur.